**RICHLAND COUNTRY CLUB, INC., Plaintiff–Appellant,**

**v.**

**CRC EQUITIES, INC., RCC Associates, L.P., and Richland Properties, Inc., Defendants–Appellees,**

**and**

**Paul Clute and Associates, Inc., and Golden Bear International, Inc., Defendants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 20, 1991.

Permission to Appeal Denied by Supreme Court April 27, 1992.

John P. Branham, Van French, Howell, Fisher & Branham, Nashville, for plaintiff-appellant.

Ed R. Davies, E. Reynolds Davies, Jr., Davies, Cantrell, Humphreys & McCoy, Nashville, for defendants-appellees CRC Equities, Inc., RCC Assoc., L.P., and Richland Properties, Inc.

Peter R. Weisz, Weisz & Associates, Atlanta, Ga., John P. Doyle, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Nashville, for Paul Clute & Associates, Inc.

## OPINION

CANTRELL, Judge.

The primary issue in this appeal is whether the trial judge properly granted summary judgment to the defendants on a finding that the plaintiffs had executed a release in the closing memorandum to a real estate transaction. The buyer insists that the trial judge should have considered parol evidence that made a genuine issue as to the meaning of the release. A secondary issue is raised by a co-defendant whose claim for indemnity against the seller of the property was dismissed by the trial judge for the failure to state a claim.

### I.

Richland Country Club, Inc. owned and operated a country club on 127 acres of land close to downtown Nashville. CRC Equities, Inc., a real estate developer, proposed to build a golf course, club house, swimming pool, and tennis courts on a 171 acre tract further out of town and trade it to Richland for the old club property. The parties entered into an agreement on September 30, 1985 setting forth their mutual obligations. The agreement contained this language:

> After the completion of the facilities set forth above and after the grant of possession of the respective properties each to the other and transfer of title, there shall be no future or further obligations between the parties....

In 1987, CRC, with the approval of Richland, assigned its interest in the agreement to RCC Associates, L.P., a Delaware limited partnership. Richland Properties, Inc. is the general partner of RCC.

After CRC and/or RCC completed the facilities described in the agreement, the parties executed a "Closing Memorandum and Acceptance Agreement" on September 30, 1988. The agreement included the following language:

> WHEREAS, the parties are simultaneously herewith closing the Property Swap and in connection therewith their desire to document their continuing obligations to each other after the closing, acknowledge that all remaining obligations pursuant to the Agreement have been fulfilled, and release each other from further obligations arising therefrom;
>
> NOW, THEREFORE, in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:
>
> 1. *Acceptance of Facilities: Punch List.* Except as otherwise set forth in Sections 2–6, the Club hereby acknowledges the full satisfaction by RCC of all of its obligations under the Agreement and, except as set forth on the punch list attached hereto as *Exhibit A* which is incorporated by reference herein (the "Punch List"), the Club does hereby approve in all respects all of the facilities constructed on the New Club Site, including, without limitation, the 18–hole golf course, maintenance barn, shelters, watering systems, cart paths, rain houses, club house, swimming pool, indoor and outdoor tennis facilities, pro shop and any and all other amenities and acknowledges that such facilities conform to the terms and provisions of the Agreement.

Soon after the closing, Richland discovered major problems in the golf course area. Mud slides damaged large areas of the course and the irrigation and drainage systems proved inadequate. On March 16, 1990, Richland filed this action against CRC, RCC, Richland Properties, Inc., Paul Clute & Associates, the construction contractor, and Golden Bear International, Inc., the golf course designer.

Clute filed a cross-claim against all the other defendants asserting a right to indemnity if Clute was found liable to Richland.

CRC, RCC, and Richland Properties, Inc. moved for partial summary judgment against Richland on the basis of the release included in the agreements. The same defendants moved for summary judgment on Clute's cross-claim. They relied on provisions of the construction agreement signed by Clute and RCC.

On September 18, 1990, the chancellor filed a memorandum opinion holding (1) that the provisions of the initial contract and the acceptance agreement were clear and unambiguous and amounted to a complete release of the claims asserted in the complaint, and (2) that Clute's cross-claim failed to state a claim upon which relief could be granted.

Richland moved the court to alter or amend the judgment and filed the affidavits of two of its members who had negotiated with CRC and RCC during the long relationship between the parties. Clute moved to amend its cross-claim and for reconsideration of the order dismissing its claim for indemnity.

The chancellor refused to consider Richland's late-filed affidavits and overruled both motions, directing the entry of a final judgment pursuant to Rule 54.02, Tenn. R.Civ.P.

## II.  Richland's Issues

Richland asserts that there are different inferences to be drawn from the facts in the record, making this an inappropriate case for summary judgment. *Prescott v. Adams*, 627 S.W.2d 134 (Tenn.App.1981). Thus, we must first decide if this is a proper case for the consideration of any facts other than the language of the contract, and, if so, what facts are properly in the record for consideration.

## A.

First, we note that a release is a contract and rules of construction applied to contracts are used in construing a release. *Jackson v. Miller*, 776 S.W.2d 115 (Tenn.App.1989). The cardinal rule is to ascertain the intention of the parties. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975). A general release covers all claims between the parties which are in existence and within their contemplation. *Cross v. Earls*, 517 S.W.2d 751 (Tenn.1974). In *Jackson*, the court adopted these additional propositions of law in seeking to discover the effect of a release:

> In interpreting a release to determine whether a particular claim has been discharged, the primary rule of construction is that the intention of the parties shall govern, and this intention is to be determined with a consideration of what was within the contemplation of the parties when the release was executed, which in turn is to be resolved in the light of all of the surrounding facts and circumstances under which the parties acted. (Citing 66 Am.Jur.2d *Release* § 30 (1973)).
>
> Claims in tort which have not matured or were not known to the parties when they executed their release and which they did not intend to affect when the settlement was made are not discharged by a release. (Citing 66 Am.Jur.2d *Release* § 33 (1973)).
>
> A release ordinarily covers all such matters as may fairly be said to have been within the contemplation of the parties when it was given ... consequently a demand of which a party was ignorant when the release was given is not as a rule ... embraced therein.... (Citing 76 C.J.S. *Release* § 52 (1952)).

776 S.W.2d at 118.

The principle upon which the chancellor relied, expressed in *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955), is cited equally as often as the other rules of construction; that is, where the agreement is plain and unambiguous, the meaning is a question of law and the court should enforce it according to its plain terms. But,

even in that case, where the court found the contract to be plain and unambiguous, the court went on to say that the terms should be construed "with reference to the situation of the parties, the business to which the contract relates and the subject matter as appears from the words used." 197 Tenn. at 640, 277 S.W.2d at 359.

Thus, it appears that the circumstances surrounding the execution of the documents in this case, the situation of the parties, the business to which the agreements related, whether the parties knew of any defects in the golf course and the irrigation system, and the subject matter of the agreements in general should have been considered in construing the effect of the release.

Without reciting the facts in the record at the time the chancellor ruled on the motion for summary judgment, we think a trier of fact could draw different inferences about the parties' intent when the various documents were signed. The possibility of drawing different inferences from the facts makes summary judgment improper. *Prescott v. Adams*, 627 S.W.2d 134 (Tenn.App.1981). In addition we think the chancellor should have considered the two affidavits filed with the motion to alter or amend. Our reasons are expressed below.

### 1.

CRC and RCC assert that the affidavits cannot be considered because they were filed after the court granted summary judgment and because the statements therein violate the hearsay and parol evidence rules.

Considering the fact that the affidavits were filed after the hearing on the original motion, we are of the opinion that this alone should not have precluded their consideration. In *Schaefer by Schaefer v. Larsen*, 688 S.W.2d 430 (Tenn.App.1984), this court said:

> We are of the opinion that when a summary judgment has been granted because the case at that point presents no facts upon which a plaintiff can recover, but prior to that judgment becoming final, the plaintiff is able to produce by

motion facts which are material and are in dispute, the motion to alter or amend the judgment should be looked upon with favor, as the purpose of the summary judgment proceeding is ... only to weed out cases for trial in which there is no genuine issue of fact.

688 S.W.2d at 433.

While we do not encourage parties to ignore the Rules of Civil Procedure pertaining to hearings on motions for summary judgment, we think the affidavits filed with the motion to alter or amend should have been treated in this case as if timely filed.

■ Considering the hearsay objection, we find the objection goes only to insignificant parts of the affidavits. The chancellor was justified in refusing to consider those parts.

■ Finally, we acknowledge that the parol evidence rule is a substantial problem. The parol evidence rule is a rule of substantive law intended to protect the integrity of written contracts. *GRW Enterprises, Inc. v. Davis,* 797 S.W.2d 606 (Tenn. App.1990). In its simplest form the rule provides: "Parol evidence cannot be received to vary, add to, detract from, or contradict the terms of the document, or to modify its legal import." *Freeze v. Home Federal Savings & Loan Assn.,* 623 S.W.2d 109, 112 (Tenn.App.1981). Some of the exceptions are collected in *Hines v. Wilcox,* 96 Tenn. 148, 33 S.W. 914 (1896). Pertinent to the question here are the exceptions for evidence that does not alter or contradict the writing and evidence that shows the inducement for entering into the contract.

■ The gist of the testimony in the two affidavits is that three times during the relationship between these parties CRC and RCC had sought a complete release of all claims by including broad language to that effect in various agreements. Each time Richland objected to the use of that language and insisted that it be deleted.

The most critical document as it pertains to this dispute is the "Closing Memorandum and Acceptance Agreement." It was initially titled "Closing Memorandum and Release" and contained this language:

1. *Mutual Release of Further Obligations: Punch List.* (a) Except as otherwise set forth in Sections 2, 3 and 4, the Club hereby acknowledges the full satisfaction by RCC of all of its obligations under the Agreement *and hereby releases RCC from all of its covenants and obligations as set forth in the Agreement, including any and all liability, obligation, cost or expense, past, present or future, or whatever kind or character, by reason of or growing out of any of the terms and provisions of the Agreement, or by reason of the breach or alleged breach of any of the terms of the Agreement.* (Emphasis added)

Pursuant to Richland's objection, the word "Release" was deleted from the title and replaced by the words "Acceptance Agreement," and the paragraph quoted here was changed to its final form as quoted above under the heading "Acceptance of Facilities."

We think the evidence in the affidavits does not contradict the final writing and is relevant to the parties' intent when they signed the agreement. Therefore, the affidavits should have been considered in ruling on the motion to alter or amend.

■ When we consider these two affidavits in addition to the other evidence in the record, it reinforces our belief that different inferences could be drawn about what the parties intended when they executed the "Closing Memorandum and Acceptance Agreement." *Prescott v. Adams,* 627 S.W.2d 134 (Tenn.App.1981). Therefore, summary judgment based on the contract was improper.

### III. Clute's Issue

■ The chancellor dismissed Clute's original cross-claim because it failed to state a cause of action and then denied the motion to amend because it came after the court had directed the entry of the final judgment pursuant to Rule 54.02, Tenn. R.Civ.P. We are of the opinion that the court erred in not allowing the amendment.

A motion to dismiss for the failure to state a claim is the equivalent of a demurrer under our former practice. *Cornpropst v. Sloan,* 528 S.W.2d 188 (Tenn. 1975). When the court granted the demurrer, the original action was at an end. 61 Am.Jur.2d *Pleading,* § 283, p. 693. Yet, the plaintiff was almost universally allowed to amend after the demurrer had been sustained. *Id.; see also* Caruthers, *History of a Lawsuit,* § 198, pp. 243–244 (8th ed., 1963).

Our modern rules also recognize that leave to amend should be freely given. Rule 15.01, Tenn.R.Civ.P. Thus, when the court grants a motion to dismiss for failure to state a claim, only extraordinary circumstances would prohibit the plaintiff from exercising the right to amend its complaint.

The judgment of the court below is reversed and the cause is remanded to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee.

TODD, P.J., and LEWIS, J., concur.