IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 23, 2000 Session

# LEE M. GREER, III, Administrator of the Estate of WOODROW WILSON TIMMONS v. MAUREEN NICOLE SNOW ZOLFAGHARBIK.

**An Appeal from the Chancery Court for Henry County**
**No. 18069     Ron E. Harmon, Chancellor**

---

**No. W1999-01013-COA-R3-CV - Filed January 30, 2001**

---

This is a will contest case. The defendant/appellant challenges the validity of a mutual release she signed in which she waived any right she had to challenge the revocation of the decedent's will or to establish any rights under the decedent's will, in exchange for a release of any claims the estate may have had against her. The trial court found that the mutual release signed by the defendant/appellant effectively waived any claim she may have had to establish the validity of the decedent's will. We affirm, finding that the mutual release was an effective waiver of any rights the defendant/appellant had under the will or to challenge revocation of the will.

**Tenn. R. App. P. 3; Judgment of the Chancery Court affirmed.**

HOLLY KIRBY LILLARD, J., delivered the Opinion of the Court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Lee M. Greer, III, Paris, Tennessee for the Plaintiff/Appellee Lee M. Greer, III, Administrator of the Estate of Woodrow Wilson Timmons, Deceased.

W. Brown Hawley, II, Paris, Tennessee for the Defendant/Appellant Maureen Nicole Snow Zolfagharbik.

## OPINION

Defendant/Appellant Maureen Nicole Snow Zolfagharbik[1] ("Snow") is a former home healthcare worker who became acquainted with the decedent Woodrow Wilson Timmons ("Timmons") while caring for his dying wife. After the death of Timmons' wife, as a result of the friendship that developed between Snow and Timmons, Snow received several financial benefits from Timmons, including his co-signing a $98,000 bank loan for her and pledging a $100,000 certificate of deposit as collateral for her loan.

---

[1]The defendant/appellant's last name was Snow at the times at issue and is now Zolfagharbik.

On September 6, 1995, Timmons executed a will naming Snow as executrix of his estate and leaving her his home and $100,000. Snow was also the beneficiary under the residuary clause of the will. The residuary clause stated that, in the event Snow predeceased Timmons, Snow's children would take the remainder of the estate:

> I give devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed to Maureen Nichole [sic] Snow of Paris, Tennessee. In the event Maureen Nichole [sic] Snow predeceases me, I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed to the issue of Maureen
>
> Nichole [sic] Snow living at the time of my death, per stirpes.

Subsequently, Snow defaulted on the $98,000 loan and, as a consequence, Timmons lost the $100,000 certificate of deposit. Timmons later filed a lawsuit against Snow based on his loss of the certificate of deposit. Timmons also directed his attorney, Gary Swayne ("Swayne"), to whom Timmons had given a durable power of attorney, to destroy the September 6, 1995 will. Timmons was not present at the destruction of the will nor did he ever execute another will. Timmons died on August 27, 1997, with the lawsuit against Snow still unresolved.

After Timmons' death and upon learning of the destruction of Timmons' will, Snow's attorney sent a letter to Swayne requesting information about persons present at the destruction of the will. Swayne never responded to her inquiries.

Plaintiff/Appellee Lee M. Greer, III ("Greer") was appointed administrator of Timmons' intestate estate by order of the probate court. The administrator's bond was set at $200,000. Snow did not request information from Greer about the circumstances surrounding the destruction of the will.

On December 23, 1997, after consulting at length with her attorney, Snow entered into a mutual release with Greer, in which Snow gave up any right to establish the September 6, 1995 will as valid, in exchange for the Estate's agreement to release her from any claims it had against her, including the bank loan suit. The release states in pertinent part:

> Snow releases the Estate from all such claims, including without limitation, any claim she would have to establish as a valid will a certain will and testament executed by [Timmons] on September 6, 1995, which the estate does represent had been destroyed . . .
>
> The Estate releases Snow from all such . . . claims, including, without limitation, any claims for reimbursement of sums owed to [Timmons] of any nature whatsoever....

Greer then filed suit against Snow, seeking a declaratory judgment that the September 6, 1995 will had been effectively revoked and that the mutual release was binding on Snow. Snow then filed a

counterclaim, asking that the mutual release be set aside. In the counterclaim, Snow asserted that the revocation of the will was ineffective and that she had been misled about the worth of the Estate.

Prior to trial, Snow filed a motion to have her two children added as necessary parties to the suit. The trial court overruled the motion. Snow also filed a motion for partial summary judgment in which she sought a ruling that the revocation of the will was ineffective because Timmons was not present at its destruction. This motion was also overruled.

At trial, the trial court heard only evidence relating to the validity of the release. The trial court held that the mutual release was valid and binding, finding that Snow understood the terms and consequences of executing the release and that each side had received valuable consideration for the execution of the release. The trial court found that its determination on the validity of the mutual release was dispositive, and declined to address the issue of the validity of the will's revocation. From this order, Snow now appeals.

On appeal, Snow argues that the trial court erred in denying her motion to add her two children as necessary parties. She asserts that the release was essentially a disclaimer or renunciation of her rights under the September 6, 1995 will and, if given effect, the property she would have received under the will would pass to her children under the residuary clause of the will, just as if she had predeceased Timmons. She argues further that the trial court erred in denying her motion for partial summary judgment on the issue of the validity of the will's revocation. She asserts that under Tennessee Code Annotated § 32-1-201, only the testator or a person in the testator's presence may effectively revoke a will by destroying it; therefore, the attempted revocation of the will was ineffective because Timmons was not present when Swayne destroyed the document. Snow also contends that the trial court erred in failing to grant partial summary judgment to her on the basis of Greer's failure to file any counter-affidavits as required by Rules 56.03 and 56.04 of the Tennessee Rules of Civil Procedure.

Snow also argues that the trial court erred in finding that the mutual release was valid and enforceable. She asserts that, at the time she executed the release, she understood that the value of the Estate was approximately $200,000,[2] and later learned that it was closer to $600,000. She contends that she would not have signed the release had she known the true value of the Estate and that Timmons was not present at the destruction of the will. Snow argues that Greer's failure to inform her of these facts was a breach of his fiduciary duty of good faith and fair dealing and constituted constructive fraud. She contends that there was no meeting of the minds on the release because she did not have the necessary information and that there was not adequate consideration for the release because the value of her devise under the will substantially outweighed the amount of any possible claims the Estate may have had against her.

---

[2]This understanding was apparently based in part on the fact that Greer's bond as administrator of Timmons' estate was set at $200,000, although the record is somewhat unclear on this point.

Greer argues that he had no fiduciary duty to Snow. He contends that she had ample opportunity and means, with the assistance of her lawyer, to investigate the circumstances surrounding the destruction of the will and the value of Timmons' estate, before signing the release. Greer notes that it is undisputed that all of Snow's inquiries about the size of the Estate and the destruction of the will were directed at Swayne, Timmons' lawyer, and not at Greer, even after Snow learned that Greer was the administrator of the Estate.

Greer also contends that Snow's motion to add her children as necessary parties was without merit because any interest that the children may have had was contingent on Snow predeceasing Timmons, which did not occur. Greer asserts that the trial court appropriately denied Snow's motion for partial summary judgment without any counter-affidavits because there are no disputed issues of material fact and the revocation of a will outside of the testator's presence is effective when the party destroying the will is acting at the testator's request pursuant to a power of attorney.

Our review is de novo accompanied by a presumption of correctness in the findings of fact of the trial court, unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *Union Carbide Corp. v. Huddleston*, 854 S.W. 2d 87, 91 (Tenn. 1993).

We address first Snow's argument that her children should have been added as necessary parties. The residuary clause in the September 6, 1995 will states that Snow's children would take the remainder of the estate "[i]n the event . . . Snow predeceases" Timmons. "A remainder is contingent if, in order for it to become a present estate, the fulfilment of some condition precedent, other than the determination of the preceding freehold estates, is necessary." *Jackson v. Jackson*, 409 S.W.2d 172, 175 (Tenn. 1966). The bequeath of the remainder of the estate to Snow's children was contingent on Snow predeceasing Timmons. This did not occur. Snow's argument on this issue is without merit.

We address next Snow's argument that the trial court erred in holding that the release was valid and binding. A release is a contract and is governed by the rules of contracts. *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991). Therefore, a release may be voided on the basis of fraud only when fraud is shown by clear, cogent, and convincing evidence. *Dixon v. Manier*, 545 S.W.2d 948, 950 (Tenn. Ct. App. 1976). Snow contends that Greer's failure to inform her of the value of the Estate and of Timmons' absence at the time the will was destroyed amounted to constructive fraud because the information was material and he had a duty to disclose it. *See Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992) (stating that nondisclosure of a material fact will give rise to fraud when there was a duty to disclose); *Parks v. Alexander*, 608 S.W.2d 881 (1980) (asserting that the theory of constructive fraud concerns a breach of a legal or equitable duty). In support of her argument, Snow cites *Baker v. Baker*, 142 S.W.2d 737 (Tenn. Ct. App. 1940), in which this Court stated that, "with respect to a widow," an executor or administrator of an estate "occupies the relation of a trustee and must deal with her in the utmost good faith, . . . disclos[ing] to her material facts within his knowledge whenever her interest is to be affected by a transaction with him." *Id.* at 750; *see also Faught v.*

*Faught*, 730 S.W.2d 323, 326 (Tenn. 1987) (surviving spouse's agreement to accept personalty in lieu of his interest in his deceased wife's estate held not a knowing waiver of his rights because the fiduciary co-executors did not give him all of the necessary information). Because Greer did not inform her of these facts, Snow asserts she did not make a knowledgeable waiver of her rights and the release should be set aside.

It is undisputed in this case that Greer, the administrator of the Estate, did not make any affirmative misrepresentations to Snow or her attorney. Indeed, Snow's inquiries were directed at Swayne, not Greer, and neither responded to them. Therefore, Snow's argument is that Greer, as administrator of the Estate, had an affirmative duty to disclose to Snow the value of the Estate and the fact that Timmons was not present at the destruction of the September 6, 1995 will. In support, however, Snow cites only cases involving the fiduciary duty of an executor or administrator to a surviving spouse waiving rights under an effective will or the intestate statute. A surviving spouse is clearly an eventual beneficiary of the estate regardless of whether there is an effective will, and the administrator's or executor's concern is the proper distribution of the estate's assets. Snow cites no case in which an administrator is found to have such a fiduciary duty to someone other than a surviving spouse.

In addition, Snow acknowledges that she had the advice of her own counsel before signing the release. She testified that she read the release and agonized over whether to sign it, speaking to her attorney about it. She conceded that her attorney would have answered any questions she may have had about the release. In the release, Snow clearly waives any claims she would have by establishing the validity of the September 6, 1995 will, in exchange for the Estate's release of its claims against her.

Under these circumstances, we find no fraud, constructive fraud or breach of fiduciary duty. Snow clearly understood the rights she was waiving and received valuable consideration in exchange for the release. Consequently, we find that the mutual release was valid and binding. The decision of the trial court on this issue is affirmed. This holding pretermits the issue of the validity of the will's revocation.

The decision of the trial court is affirmed. Costs on appeal are taxed to the Appellant, Maureen Nicole Snow Zolfagharbik, and her surety, for which execution may issue, if necessary.

_____
HOLLY K. LILLARD, JUDGE

-5-