IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2001 Session

## SUSAN J. HICKS v. CRESCENT RESOURCES, INC.

**Direct Appeal from the Chancery Court for Williamson County**
**No. II-25632      Hon. Russ Heldman Judge**

—————————

**No. M2001-00079-COA-R3-CV - Filed March 11, 2002**

—————————

Plaintiff was granted summary judgment for commissions due and owing from defendant.  On appeal, we vacate and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Vacated.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Thomas V. White, Jude A. White, Nashville, Tennessee, for Appellant, Crescent Resources, Inc.

Matthew J. Sweeney, Nancy A. Vincent, and April Y. Berman, Nashville, Tennessee, for Appellee, Susan J. Hicks.

**OPINION**

        In this action the Trial Court awarded plaintiff summary judgment for commissions and interest under an employment contract with defendant in the amount of $422,189.78.  Both parties have appealed.

        Defendant, Crescent Resources, Inc., develops, leases and manages commercial real estate.  It has multiple offices located in the southeast.  The plaintiff, Susan Hicks, is a real estate agent experienced in leasing industrial and office space.

        Following a series of meetings and negotiations, Hicks was offered and accepted a "marketing/leasing position" on July 14, 1997, with a base salary of $30,000.00 annually.  Relevant

portions of the agreement between the parties state in pertinent part:

> Commissions: Crescent Resources will pay one percent (1%) of the gross rental paid during the initial term, not to exceed 10 years, for leases generated by Susan Hicks. Renewals and expansions are excluded. For leases generated by others or the company the compensation shall be determined by the Regional Vice President.

> Bonus: Crescent Resources currently pays an annual bonus to all its full time employees based on the total company meeting or exceeding its annual budget, amount of annual compensation and the length of employment.

The parties agreed that the commissions were considered earned when a tenant signed a lease with Crescent, and were payable to Hicks when the tenant actually took possession and Hicks submitted a bonus request form.[1] Almost all tenants dealing with Crescent are represented by outside brokers; of approximately 146,000 sq. feet of leased space, only about 5,000 is leased to tenants unrepresented by a broker. According to Hicks, Pat Emery, Regional Vice President, stated that most of Crescent's tenants came via outside brokers, and it would not be necessary for her to make cold calls to generate business. According to Emery, he explained to Hicks that to receive the one percent commission she had to do more than the regular duties of a leasing agent, and she had to actually bring the tenant to the table and deal with him directly. But if a broker was involved, Emery had discretion on the commission ranging from zero to 1%. (Brokers were generally paid 4% commission). It is undisputed that Hicks did not bring any new tenants to Crescent. All the deals she worked on had broker involvement.

Hicks contends that the contract entitles her to a flat 1% commission on all deals on which she worked as a leasing agent. Crescent, through the testimony of its officers, stated that leases "generated by Susan Hicks" refers to deals for which she brought the tenant to Crescent, with no outside broker involved. To earn the 1% commission, she had to go beyond the normal duties of a leasing agent, i.e., be a "rainmaker". They maintain that the concept of "origination" or "initiation" and attracting clients to the business is an essential element of "generating". They assert that leases generated by "others" refers to deals involving an outside broker, and "others in the company" refers to deals involving other Crescent leasing agents, employees, or affiliates.

Our review of a summary judgment is *de novo* with no presumption of correctness as to the lower court's ruling. *Staples v. CBL & Assoc., Inc.,* 15 S.W.3d 83, 88-89 (Tenn. 2000).

---

[1]Somewhat confusingly, the company parlance uses the term "Bonus Request" for the forms submitted for payment of what is actually the earned commission, as distinguished from the year-end bonus based on the company's overall performance.

Where no genuine issue of material fact appears, and the applicable law warrants judgment on those undisputed facts, summary judgment is proper. *Bain v. Wells,* 936 S.W.2d 618 (Tenn. 1997).

Contract interpretation is a question of law and subject to *de novo* review. *First American Nat'l Bank v. Fidelity & Deposit Co. of Maryland*, 5 F.3d 982, 984 (6th Cir. 1993). If the language utilized by the parties in their contract is plain, complete and unambiguous, the intention of the parties must be gathered from that language alone. *Empress Health and Beauty Spa, Inc.*, 503 S.W.2d 188, 191 (Tenn. 1973). However, if the language of the contract is ambiguous, then the meaning of its terms becomes a factual question to be decided by the trier of fact. *Shelby*, 842 F.Supp. at 1007. Where a contract is plain and unambiguous, its terms should be construed with "reference to the situation of the parties, the business to which the contract relates, and the subject matter as appears from the words used." *Richland Country Club v. CRC Equities, Inc.,* 832 S.W.2d 554, 557 (Tenn. App. 1991). Where a trier of fact could possible draw different inferences about the facts and the parties' intent, summary judgment is inappropriate. *Id.*

We conclude the Trial Court erred in finding the contract is unambiguous. The term "generated" as used in the contract, can reasonably be interpreted in more than one way. The phrase to "generate a lease" can be reasonably understood to mean "to be a rainmaker" or "to do the work to bring a lease into existence". Hicks' duties as a leasing agent are clearly subject to varying definitions, and there are disputed material facts as to the amount of commissions due plaintiff.

There are also disputed material facts as to whether Hicks quit or was terminated. There is evidence presented by Crescent that Hicks told them she would no longer work for them except upon the terms she insisted upon, and resigned, and they tried to negotiate with her continuing her employment. Hicks testified that Crescent took the position she could no longer work for them unless she accepted their terms. There is also evidence in the record that Emery terminated Hicks by asking for her resignation, keys and computer, but then reconsidered and continued her employment while they continued to attempt to negotiate a resolution of the dispute. We conclude the Trial Court improperly weighed the evidence in accepting plaintiff's testimony and disregarding defendant's material evidence that directly refutes many of her claims. We accordingly vacate the summary judgment.

On the issue of bonus compensation, a full time employee is entitled to a bonus, if eligible under the "1998 Employee Goal Program" which states:

> ELIGIBILITY: All regular, full-time employees of CRI are eligible to participate in the plan. Deceased, retired, or disabled participants in the plan will receive a pro-rated award based on the period of active service during the plan year. Awards for participants who take a leave of absence will also be paid a pro-rated award based on the period of active service. Participants who are discharged or who voluntarily leave CRI prior to the end of the calendar year will not be eligible for an award.

This language states that terminated employees do not receive bonuses whether

-3-

voluntarily or involuntarily terminated. Plaintiff attests she was terminated without cause, which is a disputed issue of material fact under the contract. Since we are vacating the Judgment of the Trial Court, we do not reach the issue of the propriety of awarding pre-judgment interest.

Finally, plaintiff argues that the Trial Court erred in denying her Motion to Compel Discovery regarding Crescent's other leasing agents and the terms of their compensation. We review this determination of the Trial Court for an abuse of discretion. *Benton v. Snyder*, 825 S.W.2d 409 (Tenn. 1992). While plaintiff's request for discovery as phrased, is overly broad, nevertheless, the defendant did raise as part of its defense the matter of how it compensated other leasing agents. Byers testified that another agent, Ron Kirby, was paid on a flat rate commission on all leases, whether or not a broker was represented. Later, he explained that the language of Kirby's contract was not the same as Hicks and that discretion was involved. Defendant also claimed that all of their other leasing agents are compensated on the basis of so much per square foot of leased space as offered to Hicks. The discovery of defendant's treatment of other leasing agents is appropriate under the circumstances. However, the discovery will be limited to the written employment agreements and documentation of commissions paid. Limiting discovery to the employment agreements and bonus request forms, such as those used by Hicks, that document commission payments should not be too burdensome for the defendant to produce.

We vacate the summary judgment entered in favor of the plaintiff, and remand for further proceedings consistent with this Opinion.

The cost of the appeal is assessed one-half to plaintiff Susan J. Hicks, and one-half to defendant Crescent Resources, Inc.

_____
HERSCHEL PICKENS FRANKS, J.