IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 13, 2023 Session

## JESSICA NEAL v. PATTON & TAYLOR ENTERPRISES, LLC

**Appeal from the Circuit Court for Shelby County**
**No. CT-3767-21     James F. Russell, Judge**

_____

**No. W2022-01144-COA-R3-CV**

_____

This appeal arises from a single-car accident in which the vehicle crashed into a fence, dumpster, and construction materials in the far-right lane of a city street.  The plaintiff, who was sitting in the front passenger seat of the vehicle at the time of the accident, executed a release with the driver and the driver's insurance company.  The plaintiff subsequently filed a complaint against the construction company who placed the construction materials on the street, alleging negligence and negligence per se.  The defendant filed a motion for summary judgment.  The trial court granted the motion on the ground that the claim against the defendant was precluded by the release.  The plaintiff appealed.  We reverse and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Daniel A. Seward, Memphis, Tennessee, for the appellant, Jessica Neal.

Michael G. Derrick, Memphis, Tennessee, for the appellee, Patton & Taylor Enterprises, LLC.

## MEMORANDUM OPINION[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals provides as follows:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse
or modify the actions of the trial court by memorandum opinion when a formal opinion

# I. FACTS & PROCEDURAL HISTORY

In October 2015, Jessica Neal was riding in the front passenger seat of Danielle Boyle's vehicle in downtown Memphis when the vehicle ran through a fence and collided with construction materials and a dumpster in the far-right lane of the street. As a result of the crash, Ms. Neal allegedly suffered multiple injuries, including a crushed palate and loss of five teeth. In November 2015, Ms. Neal executed a release with Ms. Boyle and Ms. Boyle's insurer, GEICO Advantage Insurance Company ("GEICO").

In September 2020, Ms. Neal filed suit against Patton & Taylor Enterprises, LLC ("Patton & Taylor") in the General Sessions Court of Shelby County, alleging that Patton & Taylor was negligent in "maintaining, creating and/or supervising a construction site that constituted an unsafe and dangerous condition" at the site of the accident and that Patton & Taylor's negligence was a "direct and proximate cause" of her injuries.[2] The general sessions court entered judgment for Patton & Taylor. Ms. Neal appealed to the circuit court.

After appealing from the general sessions court, Ms. Neal amended her complaint. In the amended complaint, she alleged that Patton & Taylor was negligent in placing the fencing, dumpster, and construction materials on the street without proper lighting or signage and that Patton & Taylor's negligence was the direct and proximate cause of her injuries. She also alleged that Patton & Taylor was "guilty of violating" ordinances of the City of Memphis and Shelby County, and that these violations "constitute[d] negligence per se . . . ." Patton & Taylor filed an answer denying that it was liable for Ms. Neal's injuries and raising six affirmative defenses, one of which was that the claims of Ms. Neal were barred under the "doctrines of release and/or accord and satisfaction."

In June 2022, Patton & Taylor moved for summary judgment on the ground that Ms. Neal's claims were barred by the release and, as an additional and alternative ground, that there was no genuine issue of material fact regarding the cause of the underlying accident. For this second ground, Patton & Taylor referenced a response to a set of interrogatories from another lawsuit filed by Patton & Taylor against Ms. Boyle, wherein she answered that the accident was caused by a sudden emergency and was unavoidable due to an animal that suddenly ran out in front of the vehicle. In response to the motion for summary judgment, Ms. Neal argued that the release did not include any claim against Patton & Taylor and that Ms. Boyle's interrogatory responses improperly rendered an

---

would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] Ms. Neal originally filed an action in the circuit court in September 2016. This action was consolidated with Patton & Taylor's action against Ms. Boyle. In June 2019, Ms. Neal took a voluntary nonsuit without prejudice.

expert opinion that she was not qualified to give. Ms. Neal also contended that Patton & Taylor improperly used the "lay opinion testimony" of Ms. Boyle to establish that it was not negligent. Additionally, Ms. Neal submitted an affidavit stating that she did not intend to release Patton & Taylor and that she did not know that she had a potential claim or cause of action against Patton & Taylor when she signed the release. In the affidavit, Ms. Neal further stated that Ms. Boyle was not the cause of the accident.

In August 2022, the trial court issued an order granting Patton & Taylor's motion for summary judgment on the ground that Ms. Neal's claims were precluded by the release. Because the court had granted summary judgment based upon the release, the trial court did not rule upon the second ground. Ms. Neal subsequently appealed.

## II.  ISSUES PRESENTED

Ms. Neal presents the following issues for review on appeal, which we have copied verbatim from her brief:

> 1. Whether the release executed by appellant/plaintiff Jessica Neal to Danielle Boyle and GEICO Advantage Insurance Company is a release of liability to appellee/defendant Patton & Taylor Enterprises, LLC for the accident at issue;
>
> 2. Whether appellee/defendant presented admissible evidence that negates an essential element of appellant's claim or demonstrated that the appellant's evidence at the summary judgment stage was insufficient to establish appellant's claim through the interrogatory responses of Danielle Boyle taken in a lawsuit filed by appellee/defendant versus Danielle Boyle.

In its posture as appellee, Patton & Taylor presents the following issues for review on appeal, which we have slightly restated:

> 1. Whether the trial court correctly granted summary judgment in favor of Patton & Taylor on the ground that Ms. Neal released her claims against Patton & Taylor when she executed a general release that discharged the driver of the vehicle involved in the underlying accident, her insurance company, her successors and assigns, "and all other persons, firms or corporations of and from any and every claim" of liability arising out of the October 3, 2015 accident;
>
> 2. Whether the trial court granted Patton & Taylor's Motion for Summary Judgment based solely on the plain language of the release and without reaching the issue of causation, therefore rendering that issue moot on appeal.

For the following reasons, we reverse the decision of the circuit court and remand for

further proceedings.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 80 (Tenn. 2012) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). Furthermore, "[a] disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Id.* (quoting *Byrd*, 847 S.W.2d at 215). A trial court's decision to grant summary judgment is reviewed de novo with no presumption of correctness. *Falls v. Goins*, 673 S.W.3d 173, 178 (Tenn. 2023). On appeal, we must "make a fresh determination about whether the requirements of Rule 56 have been met." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 250 (Tenn. 2015)).

A moving party who does not bear the burden of proof at trial can meet its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Id.* (quoting *Rye*, 477 S.W.3d at 264). Then, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* at 889 (quoting *Rye*, 477 S.W.3d at 265). We accept the evidence presented by the nonmoving party as true, allow all reasonable inferences in its favor, and resolve any doubts about the existence of a genuine issue of material fact in its favor. *Id.* at 887.

## IV. DISCUSSION

### A. *The Release*

A release is a contract, and thus, the rules of construction for interpreting contracts are used in construing a release. *Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. Ct. App. 1989) (citing 76 C.J.S. *Release* § 38 (1952)). "A release ordinarily covers all such matters as may fairly be said to have been within the contemplation of the parties when it was given." *Id.* at 118 (quoting 76 C.J.S. *Release* § 52 (1952)). "A corollary to this principle is that a claim 'of which a party was ignorant when the release was given is not as a rule . . . embraced therein.'" *Marlett v. Thomason*, No. M2006-00038-COA-R3-CV, 2007 WL 1048950, at *6 (Tenn. Ct. App. Apr. 5, 2007) (quoting *Jackson*, 776 S.W.2d at 118). In

determining the scope of a release, this Court has quoted, with approval, 66 American Jurisprudence 2d 706, section 30, which states:

> The scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances. The intention of the parties is to be gathered from the entire instrument and in such inquiry that construction will be adopted which gives effect to each and every part of the instrument where that is possible. In interpreting a release to determine whether a particular claim has been discharged, the primary rule of construction is that the intention of the parties shall govern and this intention is to be determined with a consideration of what was within the contemplation of the parties when the release was executed, which in turn is to be resolved in the light of all of the surrounding facts and circumstances under which the parties acted.

*Evans v. Tillett Bros. Const. Co.*, 545 S.W.2d 8, 11 (Tenn. Ct. App. 1976).

On appeal, Patton & Taylor maintains that the language of the release is unambiguous, and therefore, this Court does not need to look beyond the plain meaning of the document to determine the parties' intent. However, even when a release was unambiguous, this Court has looked to the facts and circumstances surrounding the execution of the release to ascertain the parties' intent. *See, e.g.*, *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W.2d 554, 558 (Tenn. Ct. App. 1991)*; see generally Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 692 (Tenn. 2019) (noting that Tennessee cases on contract interpretation "reflect balance; they demonstrate a definite focus on the written words in the parties' contract, but they also consider evidence related to the situation of the parties and the circumstances of the transaction in interpreting those words"). In *Richland*, the defendants moved for partial summary judgment on the basis of a release included in agreements signed by the plaintiff. *Richland*, 832 S.W.2d at 556. The trial court granted the defendants' motion, finding that the agreement was unambiguous and amounted to a complete release of the claims asserted in the plaintiff's complaint. *Id.* The plaintiff subsequently moved the court to alter or amend the judgment and filed two affidavits concerning the intention of the parties in signing the release agreement. *Id.* The trial court refused to consider the affidavits and overruled the motion. *Id.* On appeal, this Court found that the trial court erred because "it appear[ed] that the circumstances surrounding the execution of the documents in this case, the situation of the parties, the business to which the agreements related . . . and the subject matter of the agreements in general should have been considered in construing the effect of the release." *Id.* at 557. After considering the circumstances through the affidavits entered by the plaintiff, this Court concluded that summary judgment was inappropriate because "a trier of fact could draw different inferences about the parties' intent." *Id.*

We reached the opposite result in *Peatross v. Shelby County*, No. W2008-02385-COA-R3-CV, 2009 WL 2922797 (Tenn. Ct. App. Sept. 10, 2009). In *Peatross*, the defendants asserted that a release signed by the heirs of a decedent released any claim that the plaintiff, the administrator of the decedent's estate, might have against the defendants. *Id.* at *2. To determine whether the trial court correctly granted summary judgment on the plaintiff's claims, we "first consider[ed] the language of the [r]elease itself," and then examined "the facts and circumstances surrounding the execution of the [r]elease." *Id.* at *4. After finding that the language of the release "support[ed] defendants' contention that [the] plaintiff's claims against them have been released[,]" we considered the affidavits of the decedent's children. *Id.* We explained that "'in matters of unambiguous written instruments absent proof of fraud, misrepresentation, undue influence and situations of like character, the unspoken subjective intent of a party is not relevant.'" *Id.* (quoting *Malone & Hyde Food Servs. v. Parson,* 642 S.W.2d 157, 159 (Tenn. Ct. App. 1982)). In the affidavits, the decedent's children offered "only their subjective impression on their intent when signing the [r]elease[]" and did not "point[] to any independent facts or circumstances from which a jury could conclude that they did not intend to release parties in addition to the [designated released party]." *Id.* This Court found that the "unspoken subjective intent" of the decedent's children was irrelevant and did not affect the reading of the "plain language of the [r]elease." *Id.* Therefore, the Court in *Peatross* found that the trial court did not err in granting summary judgment in favor of the defendants. *Id.* at *5.

After *Peatross*, this Court has in other cases followed the two-step process of analyzing the language of the release and then the facts and circumstances surrounding the execution of the release. For instance, in *Harmon v. Hickman Community Healthcare Services, Inc.,* No. M2016-02374-COA-R3-CV, 2018 WL 3267080, at *15 (Tenn. Ct. App. June 29, 2018) *rev'd on other grounds*, 594 S.W.3d 297 (Tenn. 2020), this Court examined a settlement agreement with a release signed by the children of a woman who died while incarcerated in a county jail. At the time of the execution of the release, there were at least five separate lawsuits pending in regard to her death. *Id.* at *16. We analyzed the language of the settlement agreement and noted that the text "describe[d] the event giving rise to the controversy, name[d] the four suits being settled, and list[ed] the people and entities that benefit from the [a]greement." *Id.* An additional defendant argued that it should be released as an entity included in a clause in the settlement agreement that released "all other persons, firms, and corporations . . . ." *Id.* at *17. We rejected this argument and stated that we "fail[ed] to see any evidence that, when the [s]ettlement was executed, the parties specifically intended [the d]efendant or [the defendant's employee] to be included as an 'other person[], firm[], and corporation[]' of any [r]eleased [p]arty." *Id.* Therefore, we held that summary judgment was not appropriate on the basis of the settlement agreement. *Id.*

More recently, this Court in *Sanford v. Sanford*, No. E2021-00414-COA-R3-CV, 2022 WL 1651364, at *4 (Tenn. Ct. App. May 24, 2022), looked to the text and context in analyzing the breadth of a release signed by a plaintiff. In *Sanford*, the plaintiff sued her

former husband for fraudulent misrepresentation and breach of the disclosure warranty in a marital dissolution agreement. *Id.* at *2. The trial court found that the plaintiff released those claims in an agreed order and granted summary judgment in favor of the former husband. *Id.* at *3. We first noted that the release language was unambiguous and "reveal[ed] the parties' intent that the release operate to broadly cover all claims, including future claims, related to the [marital dissolution agreement]." *Id.* at *5. In examining the facts and circumstances surrounding the execution of the release, we determined that the wife's affidavit merely asserted that she did not intend to release all claims, and this evidence did not "create a genuine issue of material fact as to what was within the contemplation of the parties at the time of the release." *Id.*

We now turn to examine the language of the release in the present case. The release signed by Ms. Neal contains a heading entitled "RELEASE IN FULL OF ALL CLAIMS" at the top of the page. The top of the document also includes a claim number. On the side of the page, "THIS IS A RELEASE IN FULL" is included in a boxed notation. The body of the release states, in part:

> I[], Jessica Abdel Jaber[3], a single Individual, Releasor(s) . . . do for myself[], my[] heirs, executors, administrators, successors and assigns, hereby remise, release, and forever discharge Danielle Cheri Boyle and GEICO Advantage Insurance Company, Releasee(s), successors and assigns, and/or [] her [] associates, heirs, executors and administrators, and all other persons, firms or corporations of and from any and every claim, demand, right or cause of action, . . . on account of or in any way growing out of any and all personal injuries and . . . property damage resulting or to result from an accident that occurred on or about the 3rd day of October 2015, at or near Third Street, and especially all liability arising out of said accident including, but not limited to, all liability for contribution and/or indemnity.

The release designates Ms. Neal as the releasor and Ms. Boyle and GEICO as the releasees. The release contains a clause releasing "all other persons, firms or corporations of and from any and every claim . . . ." Patton & Taylor is not designated as a releasee, and the document does not list Patton & Taylor as a party benefitting from the agreement.

Regarding the language of the release, the trial court found that the release "clearly and unambiguously discharges and releases 'all other persons, firms or corporations,' which includes Patton & Taylor, from all claims arising from the October 3, 2015 accident." The trial court also stated that "[b]ecause the language of the release is unambiguous, the court need not look beyond its terms to determine the parties' intent at the time plaintiff executed the release." Thus, the court did not examine the statements in Ms. Neal's affidavit in its determination of her intent when she executed the release.

---

[3] Jessica Abdel Jaber is now known as Jessica Neal.

However, as we noted in *Richland*, "the circumstances surrounding the execution of the document[] in this case, the situation of the parties, the business to which the agreements related, . . . and the subject matter of the agreement[] in general" should have been considered by the trial court in "construing the effect of the release." *Richland*, 832 S.W.2d at 557. Thus, we now examine the facts and circumstances at the time the release was executed.

Ms. Neal's affidavit sheds light on what was in her contemplation at the time she signed the release. In the affidavit, Ms. Neal asserted the following:

> 9. I did not have any personal knowledge and did not contemplate filing any claim or lawsuit against Defendant in this cause on or before November 16, 2015.
>
> 10. I first learned that I had a potential claim or cause of action against Defendant in this cause on or about December 17, 2015 after my attorney sent written notice of claim to Defendant.
>
> 11. The Release that I entered into with Danielle Boyle and GEICO Advantage Insurance Company on November 16, 2015 was prepared by GEICO Advantage Insurance Company and does not refer to, list, or name Defendant in this cause of action as a Releasee(s) and I had no intention to release and did not release Defendant in this cause of action when I signed the release . . . .

These statements in Ms. Neal's affidavit are distinguishable from the statements in the affidavits in *Peatross* and *Sanford*. In *Peatross*, the decedent's children entered an affidavit "simply assert[ing] that they were not aware that the [r]elease applied to parties other than the [designated releasee]." *Peatross*, 2009 WL 2922797, at *4 ("The unspoken subjective intent of the [releasors] is therefore irrelevant and does not affect our reading of the plain language of the Release."). In the plaintiff's affidavit in *Sanford*, she "simply assert[ed] that her 'intent was to release all claims [she] could have had at the time of the release, or in the future, as to the stock issues and the medical premiums and medical expenses.'" *Sanford*, 2022 WL 1651364, at *5. Here, however, Ms. Neal's affidavit goes beyond mere statements of her subjective intent. Specifically, Ms. Neal states that she did not know about any potential claim against Patton & Taylor at the time the release was executed and that she did not learn about such a claim until more than a month later when her attorney "sent written notice of claim." She states that the release was prepared by GEICO, and she notes that the text of the release does not list Patton & Taylor as a named releasee. In response, Patton & Taylor asserts that Ms. Neal had an "objective reason" to be aware of her claims. Patton & Taylor argues that the dumpster and other materials at the construction site were immediately apparent at the time of the accident. We find this factual dispute concerning whether Ms. Neal knew about her potential claims against

Patton & Taylor to be a genuine issue of material fact precluding summary judgment. The issue of whether Ms. Neal knew about her potential claims must be decided to resolve whether she intended to release her claim and whether this claim was in her contemplation at the time of execution. *See Jackson*, 776 S.W.2d at 118 ("Claims in tort which . . . were not known to the parties when they executed their release and which they did not intend to affect when the settlement was made are not discharged by a release.") (quoting 66 Am.Jur.2d *Release* § 33 (1973)) (concluding that a claim for loss of consortium was not within the contemplation of the parties at the time of the execution of the release, when, among other things, the plaintiffs did not know about the existence of the claim). The competing statements between Ms. Neal's affidavit regarding her lack of knowledge of the claim and the "objective reason" pointed to by Patton & Taylor could lead a trier of fact to "draw different inferences about the parties' intent" when the release was executed.[4] *See Richland*, 832 S.W.2d at 557.

After reviewing the language of the release and Ms. Neal's affidavit, we conclude that a genuine issue of material fact exists as to whether Ms. Neal knew about her potential claim against Patton & Taylor and intended to release this claim. Accordingly, we conclude that the trial court erred in granting Patton & Taylor's motion for summary judgment on this ground.

## B. *Causation*

On appeal, Ms. Neal raises an issue regarding the second ground of Patton & Taylor's motion for summary judgment and argues that her allegations of negligence have not been rebutted on the issue of causation. This Court has stated the following concerning appeals of a grant or denial of summary judgment:

> The Rules of Civil Procedure expressly require that the trial court state the grounds for any grant or denial of summary judgment. Tenn. R. Civ. P. 56.04 ("The trial court shall state the legal grounds upon which the court denies or

---

[4] In *Richland*, we recognized that the parol evidence rule is a "substantial problem." *Richland*, 832 S.W.2d at 558. However, we stated that the evidence in the affidavits did not "contradict the final writing and [was] relevant to the parties' intent when they signed the agreement." *Id.* Our supreme court has stated that for a fully integrated contract, "general extrinsic evidence of context may be used to interpret the contractual language in line with the parties' intent, but the parol evidence rule prohibits the use of evidence of pre-contract negotiations in order to vary, contradict, or supplement the contractual terms . . . ." *Individual Healthcare Specialists*, 566 S.W.3d at 697. Here, the release is fully integrated because it contains an integration clause, stating that the release "contains the entire agreement between the parties." *See id.* at 697 ("The contracts at issue . . . contained an integration clause, which indicates the parties' intent that the contracts embody their complete and exclusive agreement."). Ms. Neal's affidavit provides "general extrinsic evidence of context" that elucidates her intent and which claims were in her contemplation when signing the release, but it does not present any evidence of pre-contract negotiations in order to "vary, contradict, or supplement" the language of the release. Therefore, we deem this use of extrinsic evidence to be proper under the parol evidence rule.

- 9 -

grants the motion, which shall be included in the order reflecting the court's ruling."). While this Court may sometimes affirm the trial court's grant of summary judgment on different grounds than those stated, *see City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 n.18 (Tenn. Ct. App. 2004), we have been directed by our supreme court that an archeological dig of the record to support a trial court's action is not required. *See generally Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 314 (Tenn. 2014). Rather, the Tennessee Supreme Court has stated that a trial court's order granting or denying summary judgment must be the product of the trial court's independent judgment. *Id.* As such, we have more recently declined to rule on issues that were not expressly addressed by the trial court. *See Mid-S. Maint. Inc. v. Paychex Inc.*, No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at *14 (Tenn. Ct. App. Aug. 14, 2015) ("Generally, when the trial court fails to address an issue in the first instance, this Court will not consider the issue, but will instead remand for the trial court to make a determination in the first instance.").

*Dent Rd. Gen. P'ship v. Synovus Bank*, No. W2017-01550-COA-R3-CV, 2018 WL 6173406, at *15 (Tenn. Ct. App. Nov. 26, 2018). In its order granting summary judgment on the first ground regarding the release, the trial court stated that "the second ground upon which Patton & Taylor has moved for summary judgment need not be ruled upon and is moot." Because the trial court did not make any determination in the first instance as to the merits of Patton & Taylor's second, alternative ground, we decline to consider this issue here. Instead, we remand for the trial court to make its determination on this second ground.

## V.    CONCLUSION

For the aforementioned reasons, we reverse the decision of the trial court and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Patton & Taylor Enterprises, LLC, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE