**Bill D. JACKSON and Joyce Christian, Plaintiffs/Appellees,**

v.

**George E. MILLER, a/k/a Elija Dylan, and Auto–Owners Insurance Company, Defendants/Appellants.**

Court of Appeals of Tennessee,
Eastern Section.

March 17, 1989.

Application for Permission to Appeal
Denied by Supreme Court
May 30, 1989.

Shannon D. Faulkner, III, Poore, Cox, Baker, Ray & Byrne, Knoxville, for defendants-appellants.

Jess D. Campbell and Stephanie A. Walsh, Knoxville, for plaintiffs-appellees.

## OPINION

ANDERSON, Judge.

The question presented by this appeal is whether a release included an action for loss of consortium. The trial judge held it did not. We affirm.

Plaintiffs, Bill D. Jackson and Joyce Christian, suffered physical injuries in an automobile accident in Knox County, Tennessee. Christian and Jackson received $70,000 and $72,000, respectively, from Auto-Owners Mutual Insurance Company, and executed releases. Each plaintiff's spouse also suffered physical injuries in the accident; however, those claims were not settled.

The language of the release in question provided as follows (Jackson sample):

RECEIVED OF AUTO OWNERS MU-
TUAL INSURANCE COMPANY, HEREINAFTER CALLED THE COM-
PANY, THE SUM OF Seventy–Two Thousand and no/100 ($72,000.00) [i]n full settlement and final discharge of *all claims* under the above numbered policy *for injuries* to William D. Jackson, Knoxville, Tennessee, arising out of the ownership or operation of an uninsured automobile by George Edward Miller, 8400 Middlebrook Pike and any alias, which occurred on or about the 20th day of March, 1986, at Kingston Pike, Knoxville, Tennessee.

/s/ William B. Jackson

This 22nd day of Dec., 1986.

(emphasis added).

After the settlements both plaintiffs and spouses filed suits in Knox County Circuit Court seeking damages—the plaintiffs for loss of consortium and the spouses for their physical injuries. Motions for summary judgment were filed on the grounds the plaintiffs had released the loss of consortium actions. The court overruled the motions and at the trial, the jury awarded each plaintiff a judgment of $25,000 for loss of consortium, in addition to judgments of $121,000 and $212,000 for Jackson's and Christian's spouses, respectively. Following the judgments, in accordance with the court's prior order and the parties' agreement, the judge conducted a hearing to determine whether the releases executed by the plaintiffs barred their actions for loss of consortium. The trial judge held the causes of action for loss of consortium were not barred and defendant appealed.

■ Appellant, Auto–Owners Insurance Company, argues that the cause of action for loss of consortium is merely another element of injury to an individual, no different from other elements such as medical expenses, loss of earning capacity, or pain and suffering. Appellant reasons the release in question discharges all claims for injuries to plaintiff, including loss of consortium as an element of injury.

Consortium is defined as:

'the conjugal fellowship of husband and wife, and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation'....

[l]oss of consortium is a right of action separate from that of the husband for his damage, ... loss of services is a part of the loss of consortium....

*Manning v. Altec, Inc.*, 488 F.2d 127, 132 (6th Cir.1973). Despite being a separate claim from that of an injured spouse for other damages, loss of consortium is also a derivative claim in that the physical injuries or incapacities of one's spouse give rise to and establish the claim. *Dunn v. Alabama Oil & Gas Co.*, 299 S.W.2d 25 (Tenn. Ct.App.1956).

■ We disagree with Appellant that loss of consortium is an element of injury no different from other elements such as medical expenses. It is a cause of action separate from plaintiff's action for bodily injury, based on losses to plaintiff caused by physical injuries to plaintiff's spouse. However, the question remains whether loss of consortium is an "injury" within the meaning of the release. The authors of Corpus Juris Secundum discuss the various meanings of "injury":

### INJURY

#### In General

A generic term, which, in ordinary modern usage, is of very broad designation, having more than one meaning, for, as indicated in the following subdivisions, it may have a legal import as well as numerous and comprehensive popular meanings. The exact signification of the word "injury" has been considered and discussed by courts on numerous occasions, and their rulings are not always harmonious, since it is often difficult to lay down any actual definition of what constitutes an injury, because it is always a question of compound facts. In the broad sense, the term includes injury to person, property, reputation, and rights.

#### Popular Sense

The word "injury" has numerous and comprehensive popular meanings, which, however, may be grouped under two general heads: It may indicate a hurt, as distinguished from the infliction of the hurt; or it may indicate the infliction of a hurt, as distinguished from the hurt inflicted.

#### Legal Sense

... the word "injury" in a legal sense connotes "wrong," implies violation of a legal right, and, as in the popular sense, it may sometimes be used to indicate either the invasion of a right or the damages resulting from such invasion, the word being frequently used indiscriminately in these two different senses.

43A C.J.S. *Injury* at 765–67 (1978).

The trial court held the language of the release was ambiguous, saying, "There is a question here and it can be interpreted both ways. I think that its *for injuries* can be interpreted as plaintiff says it should be interpreted or it can be interpreted as defendant says it could be interpreted, both ways." (emphasis added). After so holding, the court found the releases were not effective to bar recovery for the claims for loss of consortium for plaintiffs.

■ Because the release is a contract, rules of construction for interpreting a contract are used in construing a release. 76 C.J.S. *Release* § 38 (1952). Ambiguous language in a contract is construed against the drafter. *Reliance Ins. Co. v. Olsen*, 678 S.W.2d 59, 61 (Tenn.1984).

The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and give effect to the intention consistent with legal principles. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975). In ascertaining the intention of the parties and what was within their contemplation, the Court should consider all of the surrounding circumstances. *See Fidelity Phenix Fire Ins. Co. of New York v. Jackson*, 181 Tenn. 453, 181 S.W.2d 625 (1944); *Barretsville Bank & Trust Co. v. Bolton*, 182 Tenn. 364, 187 S.W.2d 306 (1945). If a contract is plain and unambiguous the meaning thereof is a question of law and it is the Court's function to interpret the contract as written according to its plain terms. *Petty v.*

*Sloan,* 197 Tenn. 630, 277 S.W.2d 355 (1955). Where the writing is not plain and unambiguous and is such as to require the aid of parole evidence and the parole evidence is conflicting or such as admits of more than one conclusion, it is not error to submit the doubtful parts under proper instructions to the jury. *Forde v. Fisk University,* 661 S.W.2d 883 (Tenn.Ct.App.1983).

*In re Estate of Espey v. Sills,* 729 S.W.2d 99, 101–102 (Tenn.Ct.App.1986).

■ Here, the trial court, in an agreed non-jury hearing, determined the contract was ambiguous, heard evidence and decided the factual question of the parties' intention. Applying the familiar rules, "[t]he language of an insurance contract must be given its plain and ordinary meaning," and "it must be read as a layman, not as a Philadelphia lawyer, would read it." *Paul v. Insurance Company of North America,* 675 S.W.2d 481, 484 (Tenn.Ct.App.1984), we agree with the trial court that the release language drafted by the insurance company was ambiguous.

Appellant argues that the release in question is a general release, citing *Cross v. Earls.* The governing rule enunciated by the Supreme Court in *Cross v. Earls* is as follows:

> Generally speaking, the scope and extent of a release depends on the intent of the parties as expressed in the instrument. A general release covers all claims between the parties which are in existence and within their contemplation; a release confined to particular matters or causes operates to release only such claims as fairly come within the terms of the release.

517 S.W.2d 751, 752 (Tenn.1974) (citations omitted).

The editors of American Jurisprudence and Corpus Juris Secundum discuss the considerations in determining intent.

> In interpreting a release to determine whether a particular claim has been discharged, the primary rule of construction is that the intention of the parties shall govern, and this intention is to be determined with a consideration of what was

within the contemplation of the parties when the release was executed, which in turn is to be resolved in the light of all of the surrounding facts and circumstances under which the parties acted.

66 Am.Jur.2d *Release* § 30 (1973) (footnotes omitted).

> Claims in tort which have not matured or were not known to the parties when they executed their release and which they did not intend to affect when the settlement was made are not discharged by a release.

66 Am.Jur.2d *Release* § 33 (1973) (footnote omitted).

> A release ordinarily covers all such matters as may fairly be said to have been within the contemplation of the parties when it was given.... Consequently a demand of which a party was ignorant when the release was given is not as a rule ... embraced therein....

76 C.J.S. *Release* § 52 (1952) (footnotes omitted).

At the evidentiary hearing, the plaintiffs testified positively that no discussion about loss of consortium occurred with the insurance adjuster at any time before execution of the releases; that, indeed, they had no knowledge of a claim for loss of consortium at that time and did not intend to release such a claim. Plaintiff Christian testified that when she signed, she was told by the adjuster it was for her own personal injuries. Plaintiff Jackson testified he was told by the adjuster it was for "my hurt," for hospital bills, pain and suffering, and for injuries "for me personally."

On the other hand, the adjuster said that he remembered the subject of consortium coming up at one time, but did not recall when or with whom he discussed it. The adjuster, when asked how consortium was discussed in the context of the release, responded:

> A. I didn't enumerate every conceivable claim that they could have; neither did they. I've been handling claims, and when you settle a claim, a release is a release and that's it, as long as both parties understand that's what it is.

Our examination of the surrounding facts and circumstances under the required scope of review discloses the plaintiffs were not represented by counsel, did not know of the existence of a loss of consortium claim, and were told the release was of their own personal injuries. We therefore conclude that the claim for loss of consortium was not within the contemplation of the parties at the time of the execution of the release.

As a result of the foregoing, we hold that the evidence did not preponderate against the holding of the trial court and, accordingly, we affirm the trial court's decision. Costs of this cause are taxed against the Appellant.

SANDERS, P.J. (E.S.), and INMAN, Special Judge, concur.