# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 12, 2001 Session

## CATHY L. HALL, ET AL. v. CITY OF GATLINBURG

### Appeal from the Circuit Court for Sevier County
### No. 99-793-III    Rex Henry Ogle, Judge

### FILED FEBRUARY 6, 2002

### No. E2001-01470-COA-R3-CV

Cathy L. Hall ("Plaintiff"), was attending a convention at the convention center of the City of Gatlinburg ("Defendant"), when she fell and sustained physical injury. Plaintiff fell in one of two separate areas just mopped by Defendant's employee. After the parties submitted proof at trial, the Trial Court found Defendant negligent. The Trial Court allocated 80% fault to Defendant and 20% fault to Plaintiff. In addition to Plaintiff's compensatory damages, the Trial Court awarded damages for loss of consortium to Plaintiff's husband, Eddie Lee Hall ("Husband"). Defendant appeals, as do Plaintiff and Husband. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

E. Jerome Melson, Knoxville, Tennessee, for the Appellant, City of Gatlinburg.

Ronald J. Zuker, Knoxville, Tennessee, for the Appellees, Cathy L. Hall and Eddie Lee Hall.

# OPINION

## Background

Plaintiff attended a convention in September 1998, at the Gatlinburg Convention Center ("Convention Center"). On the morning of the second and last day of Plaintiff's attendance at the convention, Plaintiff planned to meet a group of women in the Convention Center's main foyer. On her way to meet her group, Plaintiff walked from a carpeted area to an area with a slate floor. The proof in the record shows that while walking on the slate floor, Plaintiff slipped on a slippery substance and fell. Plaintiff testified she was looking at members of her group who were approximately thirty to forty feet away when she fell. Plaintiff also testified that had she been looking at the floor, nothing would have prevented her from seeing liquid on the floor. When Plaintiff fell, she hit her upper back and head on the slate floor.

The proof in the record shows that before Plaintiff's accident, one of Defendant's employees, Joseph Stanton, had just finished mopping up two spills in the Convention Center's main foyer. Stanton testified that after mopping the first spill, he placed a wet floor sign in that area and moved to the area of the second spill. Stanton testified he had mopped the second spill but had not yet moved the wet floor sign to this site when Plaintiff fell. The proof in the record shows Plaintiff fell at the site of the second just-mopped area.

The record shows a dispute in the trial testimony regarding whether a wet floor sign was in the main foyer and, if so, its location. Four people who were in the Convention Center's main foyer when Plaintiff fell testified at trial. Three of these witnesses, two of whom are Plaintiff's sisters-in-law, testified they did not see a wet floor sign in the foyer. The fourth witness testified on behalf of Defendant and stated she saw a wet floor sign approximately five steps from where Plaintiff fell. Stanton testified he had just completed mopping the second spill and was carrying the wet floor sign to that site when Plaintiff fell.

The record shows an ambulance was summoned after the Plaintiff's fall but that Plaintiff refused medical treatment. Later that day, on her way from Gatlinburg to her home in London, Kentucky, Plaintiff sought medical treatment at the Sevierville Hospital. The next time Plaintiff sought medical treatment for her injury was two days after her accident when Plaintiff visited her family physician, Dr. Nancy Morris.

Plaintiff and Husband ("Plaintiffs") filed their Complaint against Defendant in September 1999, citing the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq.* Plaintiffs alleged Defendant was negligent in failing to remove a slippery substance from the Convention Center's floor and that Defendant had actual knowledge of this dangerous condition. Plaintiff alleged that as a result of Defendant's negligence, she had incurred physical and emotional injuries and numerous damages. In addition, Husband made a loss of consortium claim against Defendant. Defendant filed an Answer in which it alleged that Plaintiff caused her own fall because she failed to keep a proper lookout or assumed the risk.

A trial was held in April 2001. Plaintiff submitted the deposition of her family physician, Dr. Morris, who, two days after the accident, diagnosed Plaintiff as having muscle strain. Dr. Morris further testified a MRI was conducted in March 2000, which showed minimal degenerative changes in Plaintiff's cervical spine but that these degenerative changes were not due to Plaintiff's fall in September 1998. Dr. Morris did not assign Plaintiff a permanent impairment rating but testified that, as a result of her fall at the Convention Center, Plaintiff would be predisposed to pain, stiffness, and re-injury in the future. Dr. Morris testified Plaintiff never was placed on any work restrictions. Due to Plaintiff's continuing pain complaints, Dr. Morris testified she referred Plaintiff to a neurosurgeon, Dr. William Brooks. Dr. Brooks saw Plaintiff in August 2000, and diagnosed Plaintiff with severe musculoligamentous strain caused by Plaintiff's fall in September 1998.

Plaintiff has been continuously employed since the accident. Plaintiff, in fact, changed jobs between September 1998, and April 2001. Plaintiff, however, testified that in her most recent job as a teacher's assistant in a second grade classroom, bending over to work with her students exacerbates her neck pain. Plaintiff further testified that since the accident, she has a headache five out of seven days and that she does not have a day that is symptom-free. Husband testified Plaintiff's activity level had decreased since the accident and that Plaintiff is always in pain, even while sedentary.

The Trial Court, in its Judgment, awarded Plaintiff $40,000 and Husband $10,000. The Trial Court, however, found that Plaintiff was 20% at fault in causing her accident and reduced Plaintiff's and Husband's awards accordingly. The technical record on appeal contains a Memorandum Opinion which the Trial Court gave from the bench after the parties submitted proof at trial. The Trial Court incorporated this Memorandum Opinion into its Judgment. The Trial Court remarked in its Memorandum Opinion on how large an area the Convention Center's main foyer was. The Trial Court further stated that, while it found there was a wet floor sign in the main foyer, the sign was located a "considerable distance" from where Plaintiff fell. The Trial Court further found that Stanton had not located the wet floor sign in a place visible to Plaintiff as she walked through the foyer. The Trial Court found that Defendant failed to take necessary precautions and that there was nothing to put Plaintiff on notice that the spot on the floor mopped by Stanton was wet.

With respect to Plaintiff's damages, the Trial Court found, in its Memorandum Opinion, that Plaintiff incurred approximately $5,000 in medical expenses as a result of her accident.[1] The Trial Court further found the medical proof was not sufficient to establish that Plaintiff had sustained any permanent physical injury, stating that Dr. Morris should have used the AMA Guides to establish a permanent physical injury. The Trial Court found, however, that Plaintiff's accident had caused her "quite a bit of pain and suffering from this injury, and I think she should be compensated for that."

---

[1] For simplicity's sake, we use round numbers in this opinion as much as possible.

The Memorandum Opinion shows that the Trial Court, in finding that Husband was entitled to recover damages for his loss of consortium claim, stated as follows:

> The Court finds and is satisfied – and in all candor, this is one of the few cases that I've tried in a long time that I feel like the husband truly has suffered a significant loss of consortium from his wife. The Court awards him $10,000.

Defendant and Plaintiffs appeal.

## Discussion

On appeal and although not exactly stated as such, Defendant raises the following issues: (1) did the Trial Court err in finding Defendant negligent and allocating 80% fault to Defendant; and (2) did the Trial Court err in awarding, before its 80/20 allocation of fault, $40,000 to Plaintiff and $10,000 to Husband because, according to Defendant, these awards are excessive under the circumstances. Plaintiffs contend the Trial Court erred in allocating 20% fault to Plaintiff and argue the Trial Court should have allocated 100% fault to Defendant instead.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). A Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

This negligence action was brought under the Tennessee Governmental Tort Liability Act ("GTLA"). Tenn. Code Ann. § 29-20-101, *et seq.* The GTLA provides that governmental entities, as a general rule, are immune from suit. Tenn. Code Ann. § 29-20-201(a). The immunity of a governmental entity can be removed in circumstances outlined by the GTLA, including where "injury [is] caused by the dangerous or defective condition of any public building. . . ." Tenn. Code Ann. § 29-20-204(a). This statute further provides, in pertinent part, that immunity is not removed unless the governmental entity had "constructive and/or actual notice . . . of such condition. . . ." Tenn. Code Ann. § 29-20-204(b). "The question of whether a particular site is defective, unsafe or dangerous for the purpose of removing governmental immunity is a question of fact. *Coln v. City of Savannah*, 966 S.W.2d 34, 45 (Tenn. 1998), *rev'd on other grounds Cross v. City of Memphis*, 20 S.W.3d 642, 644-45 (Tenn. 2000). The record shows that the defective condition at issue in this matter is not the spilled substance but rather the just-mopped wet floor of the Convention Center's main foyer.

To establish a claim for negligence, a plaintiff must prove the following elements:

(1) a duty of care owed by defendant to plaintiff;
(2) conduct below the applicable standard of care that amounts to a breach of that duty;

(3) an injury or loss;
(4) cause in fact; and
(5) proximate, or legal, cause. . . .

*Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 99 (Tenn. Ct. App. 2001) (quoting *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995)).

Defendant contends the proof was insufficient to establish any breach of its undisputed duty of care. Defendant points to the trial testimony of one of the witnesses that a wet floor sign had been placed a few steps from where Plaintiff fell. Defendant also relies upon Stanton's testimony that at the time of Plaintiff's fall, he was in the process of moving the wet floor sign to the site of the second just-mopped area.

Our Supreme Court discussed the inquiry to be made by courts, in negligence cases, when determining whether a defendant breached its duty as follows:

"Ordinary, or reasonable, care is to be estimated by the risk entailed
through probable dangers attending to the particular situation and is
to be commensurate with the risk of injury."

*Coln v. City of Savannah*, 966 S.W.2d at 39 (*Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992)).

The Trial Court, in its Memorandum Opinion, remarked upon how large an area the Convention Center's main foyer was and stated that Defendant did not exercise "necessary precaution . . ." and that "sometimes you've got to have more than one sign. . . ." The Trial Court also found, in its Memorandum Opinion, that "coming from [Plaintiff's] direction there was nothing in place to put her on notice that the floor on the spot where she fell was, in fact, wet." It is undisputed there was, at most, only *one* wet floor sign being used by Defendant's employee, Stanton. Stanton, however, had mopped up *two spills* in the Convention Center's main foyer. We hold that the proof contained in the record on appeal does not preponderate against the Trial Court's determination that Defendant breached its duty of reasonable care under these circumstances. *Id.*; Tenn. R. App. P. 13(d). Accordingly, we affirm the Trial Court's determination that Defendant breached its duty of reasonable care and was negligent. *Coln v. City of Savannah*, 966 S.W.2d at 39

Our next inquiry concerns the Trial Court's 80/20 allocation of comparative fault between Defendant and Plaintiff. Defendant contends the Trial Court erred in finding it was 80% at fault. Defendant apparently contends Plaintiff was at least 50% at fault and, therefore, no recovery should be allowed. Plaintiffs contend the Trial Court erred in assessing Plaintiff any fault.

The Trial Court's allocation of comparative fault to the parties is a question of fact, and accordingly, our review is *de novo* with a presumption of correctness as set forth by Tenn. R. App. P. 13(d). *Cross v. City of Memphis*, 20 S.W.3d 642, 645 (Tenn. 2000). We hold the evidence

contained in the record on appeal does not preponderate against the Trial Court's allocation of fault of 80% to Defendant and 20% to Plaintiff, and therefore, we affirm the Trial Court's 80/20 allocation of comparative fault. *See id.*; Tenn. R. App. P. 13(d).

We now turn our inquiry to Defendant's final argument on appeal that Plaintiff's and Husband's awards are excessive. Compensatory damages are intended "to restore the wronged party, as nearly as possible, to the position the party would have been in had the wrongful conduct not occurred." *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998). "Damages need not be calculated with mathematical precision, . . . [and] they need only be proved with reasonable certainty." *Id.* The amount of damages awarded by the Trial Court is a question of fact, and as such, is subject to the standard of review set forth by Tenn. R. App. P. 13(d). *Id.*

In support of its argument that the Trial Court's award to Plaintiff was excessive, Defendant points to the Trial Court's finding, in its Memorandum Opinion, that the medical proof did not establish that Plaintiff sustained a permanent physical injury. Defendant also contends the $40,000 award is excessive in light of the relatively low amount of Plaintiff's medical expenses of $5,000. Moreover, Defendant argues that, if the Trial Court based most of Plaintiff's award upon Plaintiff's pain and suffering, the proof establishes that Plaintiff's complaints of pain are related to her degenerative disc disease and the physical requirements of her job.

The proof contained in the record shows that, while Plaintiff did not sustain a permanent physical injury, Plaintiff incurred approximately $5,000 in medical expenses as a result of this accident. Plaintiff and Husband both testified that due to her pain, she has to limit her level of physical activity. While Plaintiff has not missed any time from work as a result of this injury, Plaintiff testified that while working as a teacher's assistant with second grade students, her neck pain is exacerbated. In addition, the record shows that both Dr. Morris and Dr. Brooks diagnosed Plaintiff with a cervical strain and agreed that Plaintiff likely would continue to suffer from exacerbation and reoccurrence of her symptoms. Plaintiff also testified about her continuing pain.

In addition, the Trial Court, in making its award of compensatory damages to Plaintiff, undoubtedly found Plaintiff and her Husband to be credible witnesses. "Unlike this Court, the [T]rial [C]ourt observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The Trial Court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

In our view, the proof contained in the record does not preponderate against the Trial Court's pre-allocation of fault award of compensatory damages to Plaintiff in the amount of $40,000. *See Beaty v. McGraw*, 15 S.W.3d at 829. This is particularly so given the deference we afford the

Trial Court's assessment of the witness' credibility. *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d at 502; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d at 563.

With respect to the Trial Court's pre-allocation of fault award of $10,000 to the Husband for his loss of consortium claim, Defendant argues the proof is insufficient to warrant such an award. Defendant points to Husband's testimony that, in the year before the trial, he mowed the yard one time and Plaintiff mowed it one time, whereas before the accident, Plaintiff did all of the household and yard work without his assistance. Husband further testified that since the accident, he sometimes has to drive on trips because Plaintiff cannot drive the entire way as she did prior to her accident. Defendant also argues that while Husband testified he and his wife have had decreased intimacy due to the accident, they still have sexual intercourse twice per week. Defendant also contends Husband offered no testimony he had incurred any expenses as a result of Plaintiff's accident.

Tenn. Code Ann. § 25-1-106 provides for a right of recovery of loss of consortium for a person whose spouse is injured. While a loss of consortium claim is a derivative claim, it is also a distinct and separate cause of action from that of the injured spouse's claim. *Hunley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 557-58 (Tenn. 2001). This Court has defined consortium as follows:

> "the conjugal fellowship of husband and wife, and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation" . . . loss of services is a part of the loss of consortium. . . .

*Jackson v. Miller*, 776 S.W.2d 115, 116-17 (Tenn. Ct. App. 1989) (quoting *Manning v. Altec, Inc.*, 488 F.2d 127, 132 (6th Cir. 1973)).

Both Plaintiff and Husband testified that since Plaintiff's accident, Plaintiff is less physically active. Husband testified he works twelve to fourteen hours per day and that Plaintiff, before her September 1998, accident, performed all of the household chores and yard work. Husband testified that after the accident, however, Plaintiff was not able to take care of these things by herself. Husband also testified that his and his wife's intimate relationship has suffered as a result of this accident.

As with Plaintiff's award of damages, the Trial Court made a credibility determination when rendering its decision about the value of Husband's loss of consortium claim. The Memorandum Opinion shows the Trial Court addressed this claim and stated that Husband's claim was one of the few where it found a husband "suffered a significant loss of consortium from his wife. . . ." As discussed, the Trial Court's assessment of witness credibility is afforded deference by this Court and will be not be re-evaluated without clear and convincing evidence to the contrary. *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d at 502; *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d at 783. Therefore, we hold that the evidence does not preponderate against the Trial Court's pre-allocation of fault award of $10,000 to Husband for his loss of consortium claim.

*Beaty v. McGraw*, 15 S.W.3d at 829.  Accordingly, we affirm the Trial Court's award to Husband.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below.  The costs on appeal are assessed against the Appellant, City of Gatlinburg, and its surety.

_____
D. MICHAEL SWINEY, JUDGE