# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 6, 2004 Session

## RICHARD E. MILLER v. BERNARD STONE, ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 02C2214     Samuel H. Payne, Judge**

---

**No. E2004-00421-COA-R3-CV FILED MARCH 29, 2005**

---

Richard E. Miller, in his capacity as an officer and director of Duncan Electric Company, Inc. ("Duncan Electric"), brought this action against the company's other directors, Bernard Stone and Greta B. Lindsay (collectively "the defendants"), alleging that they had breached certain fiduciary duties owed to him. Stone and Lindsay each moved for summary judgment on the basis that a settlement agreement and release entered into by the parties in a prior and separate lawsuit barred the plaintiff's present action. The trial court granted the defendants' motions and ordered the plaintiff to pay their attorney's fees. The plaintiff appeals, arguing that the trial court erred in granting summary judgment to the defendants. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

Michael E. Richardson, Chattanooga, Tennessee, for the appellant, Richard E. Miller.

Donald J. Aho and Alison Bales Martin, Chattanooga, Tennessee, for the appellee, Bernard Stone, Individually, and in his capacity as Co-Trustee of the Estate of W. Terry Lindsay and as Co-Trustee of the Irrevocable Trust of W.S. Lindsay.

Michael R. Campbell, Chattanooga, Tennessee, for the appellee, Greta B. Lindsay, Individually, and in her capacity as Co-Executor of the Estate of W. Terry Lindsay and as Co-Trustee of the Irrevocable Trust of W.S. Lindsay.

### OPINION

I.

W. Terry Lindsay ("the decedent") was president and majority shareholder of Duncan Electric, holding 64.44% of the company's stock. The other shareholders were the Irrevocable Trust of William S. Lindsay ("the Lindsay Trust") with a 24.44% interest, and the plaintiff with a 11.11% stake. On March 15, 2000, the decedent passed away. Stone, who served as Duncan Electric's accountant, and Lindsay, the decedent's widow, were the co-executors of the decedent's estate ("the Lindsay Estate"). In addition, the two served as co-trustees of the Lindsay Trust.

Under the terms of Duncan Electric's stock purchase agreement ("the SPA"), the company, upon the decedent's death, was obligated to redeem the stock held by the Lindsay Estate and the Lindsay Trust. On March 27, 2000, Duncan Electric's attorney, C. George Caudle, met with Stone, Lindsay, and the plaintiff to discuss the stock redemption. At the meeting, Stone, Lindsay, and the plaintiff were elected directors of the corporation, and the plaintiff was elected president.

On March 31, 2000, Caudle advised Stone and the plaintiff that White Electrical Construction Company ("White Electrical") in Atlanta was interested in purchasing Duncan Electric. On that same date, Caudle prepared an Agreement and Amendment ("the Amendment") to the SPA, which would eliminate Duncan Electric's right and obligation to purchase the stock held by the Lindsay Estate and the Lindsay Trust. A few days later, the plaintiff, Stone, and Lindsay met with Caudle and Preston Bond, the president of White Electrical, to discuss the potential purchase of Duncan Electric. One week later, the plaintiff, Stone, Lindsay, and Caudle again met to discuss White Electrical's proposal, and at that meeting, the plaintiff, Stone, and Lindsay signed the Amendment to the SPA, thus eliminating Duncan Electric's right and obligation to purchase the stock.

On May 2, 2000, Caudle received a letter from an accountant retained by the plaintiff, advising that the plaintiff contended that he had been induced into signing the Amendment based upon representations made to him that Duncan Electric was not in an economic position to purchase the shares of stock owned by the Lindsay Estate and the Lindsay Trust, and that the plaintiff had been told that it would be in his best interest to sign the Amendment. The plaintiff, through his accountant, contended that these representations might be inaccurate and that the Amendment should be considered null and void.

Three weeks later, Duncan Electric's board of directors voted to accept White Electrical's proposal to purchase substantially all of Duncan Electric's assets. On June 23, 2000, Lindsay and Stone, in their roles with respect to the Lindsay Estate and the Lindsay Trust, voted to approve the sale of Duncan Electric's assets. The plaintiff voted against the sale. The sale was approved and the company's name was changed to Lindsay, Inc.

On December 1, 2000, the plaintiff filed a suit in chancery court, on behalf of himself and all other shareholders of Lindsay, Inc., against White Electrical, Stone, and Lindsay. In essence, the

complaint alleged that the cause of action arose from the sale of Duncan Electric to White Electrical. Count III of the complaint, which is pertinent to the instant case, avers as follows:

> [The plaintiff] brings this action against [Stone] and [Lindsay] as members of the Board of Directors of Duncan for their failure to carry out their common law and statutory fiduciary duties and responsibilities to act in good faith for the benefit of all of the stockholders of Duncan, to treat all of the stockholders of Duncan fairly by making distributions pro rata to them as required by [Tenn. Code Ann.] § 48-16-101, for assigning to White the asserted claim for indebtedness against [the plaintiff] arising out of his employment with Duncan after Duncan had settled all such matters with [the plaintiff], and for failing to take appropriate action to protect all the stockholders of Duncan against the improper actions of White. More specifically [the plaintiff] avers that the directors of Duncan violated the duty imposed upon them under [Tenn. Code Ann.] § 48-18-301. [The plaintiff] seeks compensatory damages, punitive damages and all costs and attorney fees expended by him as a result of such violations.

(Paragraph numbering in original omitted). This action was settled in May, 2001. On May 4, 2001, the plaintiff signed a settlement agreement containing releases and covenants not to sue. The plaintiff's attorneys participated in drafting the settlement agreement. The agreement contains the following pertinent language:

> WHEREAS, all parties to this Agreement now desire to fully and finally compromise, settle, and resolve all claims and disputes among and between them, including without limitation, all claims sought to be enforced in the above-described civil action.
>
> * * *
>
> Upon payment of the sums described in Paragraph 1, supra, . . . Stone (including Stone in his capacities as director, agent, and representative of Lindsay, Inc., and as trustee or representative of the Plan); [and] Lindsay . . . shall, without further action, stand fully and finally released, absolved, and discharged by [the plaintiff] from all claims, debts, dues, demands, and causes of action of every name and nature, however or whenever arising, whether cognizable in law or in equity, for or by reason of any manner or act, omission, event or occurrence, including all claims through and including the date of this Agreement which were or could have been asserted through and

including the date of this Agreement by [the plaintiff] and sought to be enforced in the above-described civil action.

* * *

[The plaintiff] hereby covenants and agrees never to commence or prosecute any legal action or administrative proceeding based on any matter released above, and shall indemnify and hold . . . Stone (including Stone in his capacities as director, agent, and representative of Lindsay, Inc., and as trustee or representative of the Plan); [and] Lindsay . . . harmless from and against any and all claims, losses or damages (including attorneys' fees and costs) resulting from any such legal action or administrative proceeding commenced or prosecuted and from any breach or failure to comply with the terms of this Settlement Agreement Containing Releases and Covenants Not to Sue.

(Paragraph numbering in original omitted) (underlining in original). On August 29, 2001, the chancery court entered an order dismissing the plaintiff's action with prejudice.

In early August, 2002, Caudle learned that the plaintiff was considering the filing of a lawsuit related to a claim arising out of his execution of the Amendment. On August 13, 2002, Caudle sent a letter to the plaintiff's attorney in an attempt to dissuade the plaintiff from filing the action. In that letter, Caudle alluded to the terms of the settlement agreement.

On December 20, 2002, the plaintiff filed suit in the trial court against Stone and Lindsay, individually and in their capacities as co-executors of the Lindsay Estate and as co-trustees of the Lindsay Trust. The plaintiff alleged that Stone made negligent or false misrepresentations of fact to him, causing him to enter into the Amendment, whereby Duncan Electric waived its right to purchase the stock owned by the Lindsay Trust and the Lindsay Estate. In addition, the plaintiff alleged that Lindsay was guilty of non-disclosure of the discussions and negotiations with White Electrical and that she was guilty of fraudulent and material misrepresentations of fact.

Lindsay filed an answer and counterclaim on February 17, 2003, relying upon the settlement agreement entered into by the plaintiff on May 4, 2001, and the doctrine of *res judicata*. She also pled the one-year statute of limitations governing actions against directors and officers. *See* Tenn. Code Ann. § 48-18-601 (2002). She asserted a counterclaim against the plaintiff for breach of the hold harmless provisions of the settlement agreement, requesting a judgment for her attorney's fees and costs. Stone filed his answer and counterclaim on February 24, 2003, alleging breach of the settlement agreement and the contractual duties of good faith and fair dealing, seeking indemnification for damages, attorney's fees and costs.

Both Lindsay and Stone moved for summary judgment in April, 2003, relying upon the language in the release contained in the settlement agreement. In addition, Stone relied on the one-year statute of limitations for filing accounting malpractice actions.

The trial court filed its memorandum opinions on August 4, 2003. In them, the court determined that the language of the settlement agreement established that the plaintiff had executed a general release, expressly discharging Stone and Lindsay from all claims and causes of action existing at the time of execution of the agreement. The trial court then granted Stone and Lindsay's respective motions for summary judgment and ruled that they were both entitled to their attorney's fees. As to Stone, the trial court held that the plaintiff's cause of action for accounting malpractice had accrued in May or June, 2000, and was therefore barred by the one-year statute of limitations. The trial court entered its judgment for Stone on October 16, 2003, and judgment for Lindsay was entered on February 5, 2004.

The plaintiff filed a motion to alter or amend on November 14, 2003, which motion was denied on January 13, 2004. From this order, the plaintiff appeals.

## II.

In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." **Byrd v. Hall**, 847 S.W.2d 208, 210-11 (Tenn. 1993).

A party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. **Id.** at 215. Once the moving party satisfies its burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact requiring submission of the case to a trier of fact. **Id.**

Since summary judgment presents a pure question of law, our review is *de novo* with no presumption of correctness as to the trial court's judgment. **Gonzales v. Alman Constr. Co.**, 857 S.W.2d 42, 44-45 (Tenn. Ct. App. 1993).

## III.

The plaintiff's sole issue on appeal is whether the trial court erred in granting summary judgment to Stone and Lindsay based upon the release entered into between the parties in settlement of the chancery court lawsuit. The plaintiff contends that the release was limited to the claims and causes of action that the plaintiff had sought to enforce in the chancery court action, and was not intended to and did not release Stone and Lindsay from additional causes of action that were not

raised in the chancery court action. In support of this contention, the plaintiff points to the language of the release which states that all claims "through and including the date of this Agreement [are released] which were or could have been asserted through and including the date of this Agreement by [the plaintiff] *and sought to be enforced in the above-described civil action*." (Emphasis added). It is the plaintiff's position that the final clause of that sentence expressed a clear intent to limit the release to any claims which were or could have been actually raised in the chancery court action. Because, so the argument goes, the plaintiff brought the chancery court case against Stone and Lindsay for their alleged failure to make proper *pro rata* distributions to the plaintiff, while the allegations against Stone and Lindsay in the instant action involved alleged breaches of fiduciary duties, the claims involved in the two cases are entirely different and the plaintiff could not have released claims that he never sought to enforce in chancery court.

The scope and extent of a release was addressed in the Supreme Court case of *Cross v. Earls*, 517 S.W.2d 751, 752 (Tenn. 1974):

> Generally speaking, the scope and extent of a release depends on the intent of the parties as expressed in the instrument. A general release covers all claims between the parties which are in existence and within their contemplation; a release confined to particular matters or causes operates to release only such claims as fairly come within the terms of the release.

*See also* **Jackson v. Miller**, 776 S.W.2d 115, 118 (Tenn. Ct. App.1989); **Richland Country Club, Inc. v. CRC Equities, Inc.**, 832 S.W.2d 554, 557 (Tenn. Ct. App.1991); **Louis Dreyfus Corp. v. Austin Co.**, 868 S.W.2d 649, 654 (Tenn. Ct. App.1993). "Because the release is a contract, rules of construction for interpreting a contract are used in construing a release." *Jackson*, 776 S.W.2d at 117. The cardinal rule of construction provides that a court is to determine the intention of the parties. **Richland Country Club, Inc.**, 832 S.W.2d at 557. The words of a release, like any other contract, are to be "given their usual, natural and ordinary meaning." **Rainey v. Stansell**, 836 S.W.2d 117, 119 (Tenn. Ct. App.1992). In determining the intention of the parties, we consider the language of the release in the context of "what was within the contemplation of the parties when the release was executed." *Jackson*, 776 S.W.2d at 118 (citing 66 Am. Jur. 2d *Release* § 30 (1973)).

Applying this law to the release in the instant case, we find that the release entered into by the parties was a general release. It states that Stone and Lindsay shall

> stand fully and finally released, absolved, and discharged by [the plaintiff] from all claims, debts, dues, demands, and causes of action of every name and nature, however or whenever arising, whether cognizable in law or in equity, for or by reason of any manner or act, omission, event or occurrence, *including* all claims through and including the date of this Agreement which were or could have been

asserted through and including the date of this Agreement by [the plaintiff] and sought to be enforced in the above-described civil action.

(Emphasis added). The only reasonable interpretation of this language is that the plaintiff was releasing Stone and Lindsay from any and all claims that had arisen through the date of the settlement agreement – which was May 4, 2001 – *including* any claims that were or could have been asserted in the chancery court action. The word "including" does not limit the claims to those asserted in the chancery court case; rather, those claims are included along with any other claims *of any nature* the plaintiff could have asserted against Stone and Lindsay as of May 4, 2001.

In the complaint filed in the instant case, the plaintiff alleged that Stone and Lindsay had breached certain fiduciary duties owed to him, and these alleged breaches all concerned conduct that occurred at the time of the sale of Duncan Electric to White Electrical, which occurred – at the latest – in June, 2000. Caudle received a letter from the plaintiff's accountant on May 2, 2000, in which these alleged breaches of fiduciary duties were raised. Accordingly, the plaintiff was well aware of these causes of action in May, 2001, when he signed the settlement agreement releasing Stone and Lindsay from any claims he might have against them at that time.

We hold that the language of the release clearly makes it a general release. It in no way purports to confine the release to specific matters. Indeed, the only restrictive language in the release concerns time – the release only applies to claims that were known to the plaintiff at the time the agreement was signed on May 4, 2001. As we have previously held that the conduct complained of by the plaintiff all occurred well before May 4, 2001, the language of the release bars the plaintiff from bringing the instant action against Stone and Lindsay, and the trial court was correct in granting summary judgment to Stone and Lindsay on this basis.

In addition, because the plaintiff breached the settlement agreement by bringing this action against Stone and Lindsay, we affirm the trial court's award of attorney's fees to both of these defendants.

IV.

As an additional basis for granting summary judgment to Stone, the trial court relied on the one-year statute of limitations for accounting malpractice, codified at Tenn. Code Ann. § 28-3-104(a)(2) (2000). In his complaint in the instant case, the plaintiff alleged that Stone breached his professional duties as an accountant by failing to render proper financial advice to the plaintiff with respect to the potential sale of Duncan Electric to White Electrical. Based upon the letter from plaintiff's accountant to Caudle, in which this alleged unsound financial advice was referenced, the

-7-

plaintiff was aware of this potential malpractice claim in early May of 2000. However, the plaintiff did not file his complaint in the instant case until December 20, 2002, more than two and one-half years later. Accordingly, we hold that the plaintiff's claims against Stone are barred by the one-year statute of limitations and we affirm the trial court's grant of summary judgment to Stone on this ground.

While not addressed in Lindsay's motion for summary judgment or the trial court's subsequent grant of same, Lindsay, in her answer and counterclaim, relied upon the one-year statute of limitations for actions against officers and directors for breach of fiduciary duty, codified at Tenn. Code Ann. § 48-18-601. This statute provides, in pertinent part, that "[a]ny action alleging breach of fiduciary duties by directors or officers . . . must be brought within one (1) year from the date of such breach or violation." As we have previously held, the plaintiff was aware of the potential claims he had against Lindsay in May, 2000, and he did not file suit based upon breach of fiduciary duties until December 20, 2002. We find that the plaintiff's action against Lindsay is barred by this one-year statute of limitations, and we hold that it serves as an additional ground for affirming the trial court's grant of summary judgment to her.

V.

Both Stone and Lindsay seek an award for the attorney's fees and expenses incurred in defending this appeal. We find that such an award is appropriate. As such, we remand this case to the trial court for a determination of the amount of fees to award for this appeal. *See Folk v. Folk*, 357 S.W.2d 828, 829 (Tenn. 1962) (discussing the factors to be considered in awarding such fees).

VI.

The judgment of the trial court is affirmed. This case is remanded to the trial court for enforcement of the trial court's judgment and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Richard E. Miller.

_____

CHARLES D. SUSANO, JR., JUDGE