# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
## November 8, 2012 Session

## GEORGE RIDENOUR v. DARRELL CARMAN ET AL.

**Appeal from the Circuit Court for Trousdale County**
**No. 4061P261     John Wooten, Judge**

**No. M2012-00801-COA-R3-CV - Filed March 15, 2013**

The plaintiff, an employee of a real estate and auction company, sustained serious injuries while assisting the managing broker of the company to move cattle panels on the managing broker's personal farm. The plaintiff filed a claim for workers' compensation benefits against the real estate and auction company and its insurer. The plaintiff also filed a common law tort action against the managing broker and the broker's son, who was called to assist after the injury occurred. The workers' compensation action was settled. Pursuant to the court-approved settlement agreement, the employee released and discharged the real estate and auction company and its insurer, as well as their subsidiaries, affiliates, officers, directors, employees, agents and representatives "from any and all further liability and indemnity, under the terms and provisions of the Workers' Compensation Law of the State of Tennessee, at common law or otherwise . . . ." After the workers' compensation action was settled, the managing broker and his son filed a joint motion for summary judgment to dismiss the plaintiff's tort claims on the grounds they were afforded immunity under the Workers' Compensation Law, specifically Tennessee Code Annotated § 50-6-108(a), and that the plaintiff gave the defendants a full release in the workers' compensation settlement agreement. The trial court summarily dismissed all claims against the defendants on both the statutory ground and the release. We affirm the dismissal of the tort claims against the employer's managing broker. However, we reverse the dismissal of the claims against the managing broker's son because the son was not an affiliate, officer, director, employee, agent or representative of the employer when the plaintiff sustained his injuries and he does not come within the terms of the release. Therefore, the plaintiff's claims against the son are reinstated and remanded for further proceedings.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in part; Reversed in part and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Rocky McElhaney and Taylor C. Sutherland, Nashville, Tennessee, for the appellant, George Ridenour.

Steven A. Dix, Murfreesboro, Tennessee, and Betty Lou Taylor, Hartsville, Tennessee , for the appellees, Darrell Carman and Chad Carman.

## OPINION

George Ridenour ("Plaintiff") was an employee of the Lafayette, Tennessee office of Gene Carman Real Estate and Auction, LLC ("the Auction Company") when the events that gave rise to this action occurred. As an employee of the Auction Company, Plaintiff's duties consisted of, *inter alia*, building and posting large signs advertising auctions and working on various farms and other pieces of property owned by Darrell Carman, the managing broker at the Lafayette Office of the Auction Company. Plaintiff's farm duties included looking after livestock, mending fences, and performing miscellaneous other farm services as requested by Darrell Carman. All of Plaintiff's wages were paid by the Auction Company, even when he was working for Darrell Carman on farms personally owned by Darrell Carman and Mr. Carman's wife. Plaintiff received no compensation from Darrell Carman.

On the morning of November 12, 2007, Plaintiff went to one of Darrell Carman's farms to assist Mr. Carman in moving several pieces of metal wire fencing, known as cattle panels, from one of Mr. Carman's farms to another. The two men loaded the panels on a trailer behind Mr. Carman's truck, but the panels were longer than the trailer so Mr. Carman tied a large steel fence post to the bed of the trailer to support the portion of the panels that extended beyond the trailer. The two men then drove to Mr. Carman's second farm. When Plaintiff began unloading the panels, one end of the steel post suddenly broke loose and struck Plaintiff in the head. The impact immediately caused Plaintiff to be dazed, confused and concussed, so Mr. Carman helped Plaintiff to his feet and back into the truck. While Plaintiff rested on the seat with his body half-in and half-out of the truck, Mr. Carman proceeded to unload the rest of the cattle panels. Shortly thereafter, Mr. Carman instructed Plaintiff to pull the truck forward, while Mr. Carman waited outside the truck. Plaintiff accidentally drove the truck through a fence and crashed into another one of Mr. Carman's trucks parked nearby. Darrell Carman then called his son Chad Carman, who lived 200 yards away, to help him separate the two wrecked trucks and take Plaintiff home. Neither Darrell nor Chad Carman offered to render any medical care to Plaintiff or call for medical assistance. Instead, they drove Plaintiff to his home, carried him inside and left him in the kitchen alone, without alerting any of Plaintiff's family members about Plaintiff's condition. When Plaintiff's wife discovered Plaintiff, she immediately took him to the emergency room at the Trousdale Medical Center. From there, Plaintiff was life-flighted to Vanderbilt University Medical Center where he was diagnosed with a closed head injury and mild

traumatic brain injury. Over the next three years, Plaintiff received extensive medical care from various medical providers including a neurosurgeon, a neurologist, a neuropsychologist and a psychiatrist and was further diagnosed with depression, post traumatic stress disorder and back pain.

Plaintiff initiated a claim for workers' compensation benefits against the Auction Company and its workers' compensation insurance carrier, Benchmark Insurance, on November 19, 2007; the claim was accepted as compensable by the Auction Company and Benchmark Insurance. While the claim was pending, the Auction Company and Benchmark Insurance paid $48,397.91 for Plaintiff's medical care and $59,177.66 to Plaintiff for temporary disability benefits. When Plaintiff reached maximum medical recovery, the parties agreed to a settlement. On July 26, 2011, an Order Approving Final Settlement was entered in the Trousdale County Chancery Court ("Settlement Order"), resolving Plaintiff's workers' compensation claim. Pursuant to the Settlement Order, Plaintiff received a lump sum payment of $75,000, including $15,000 in attorney's fees, $1,770.01 in medical reimbursements, and $58,229.01 for permanent impairment.[1] The Settlement Order also provided the following release:

> It is accordingly considered by the Court and so ORDERED, ADJUDGED AND DECREED that the settlement set forth above be, and the same is hereby, in all things, approved by this Court, and that the Employer and the Insurer, their parents, subsidiaries, affiliates, officers, directors, employees, agents, representatives, successors, and assigns, be, and are hereby, forever remised, released and discharged from any and all further liability and indemnity, under the terms and provisions of the Workers' Compensation Law of the State of Tennessee, at common law or otherwise, except as stated in Paragraph 3 above, to the Employee, the Employee's administrators, executors, heirs, dependents and assigns, as a result of or in any way connected with or growing out of the Employee's alleged injuries of November 12, 2007, and any other workers' compensation claims which the Employee possesses against the Employer and/or Insurer. This Order supersedes and supplants any Orders the Tennessee Department of Labor may have issued with respect to the subject injury.

(Hereafter, "the Release").

On November 12, 2008, while the workers' compensation claim was pending, Plaintiff filed this tort action against Darrell Carman and Chad Carman (collectively,

---

[1]Plaintiff's future medical benefits as they pertain to this injury remain open for his lifetime.

"Defendants") in the Trousdale County Circuit Court. Plaintiff alleged that Darrell Carman was reckless, grossly negligent, or negligent in improperly loading the cattle panels. Plaintiff also alleged that both Darrell and Chad Carman were reckless, grossly negligent, or negligent in failing to render aid or call for medical assistance, which aggravated the injuries. Plaintiff sought $1,000,000 in compensatory damages and $500,000 in punitive damages. Defendants filed their answers, after which the tort action remained dormant until the resolution of the workers' compensation claims.

After the Settlement Order was entered in the workers' compensation case, Defendants filed a joint Motion for Summary Judgment in the circuit court. They asserted that Plaintiff elected the workers' compensation claim as his exclusive remedy, and furthermore that Plaintiff had released both Defendants from further liability under the above-quoted Release provided in the Settlement Order. In response to the motion, Plaintiff asserted that Chad Carman was not an employee, agent or representative of the Auction Company, and that Darrell Carman was acting outside the course and scope of his employment with the Auction Company when Plaintiff was injured. Thus, Plaintiff argued, the Release did not apply to either Defendant, and the tort claims were proper under the Workers' Compensation Law provision for third party actions found at Tennessee Code Annotated § 50-6-112(a).

Following a hearing held February 13, 2012, the trial court granted Defendants' motion on both asserted grounds; thereafter, Plaintiff perfected this appeal.

## ANALYSIS

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *McCarley*, 960 S.W.2d at 588; *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court makes a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). We consider the evidence in the light most

favorable to the non-moving party and resolve all inferences in that party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214.

CLAIMS AGAINST DARRELL CARMAN

Plaintiff alleges that Darrell Carman was reckless, grossly negligent, or negligent on November 12, 2007, in improperly loading the cattle panels and, thereafter, in failing to render aid or call for medical assistance, which aggravated Plaintiff's injuries. Darrell Carman insists that, as an employee of the Auction Company on November 12, 2007, he was released from any further liability pursuant to the Settlement Order and thus, the trial court did not err in summarily dismissing Plaintiff's claims against him.[2]

A release is a contract and rules of construction applied to contracts are used in construing a release. *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991) (citing *Jackson v. Miller*, 776 S.W.2d 115 (Tenn. Ct. App. 1989)). The cardinal rule is to ascertain the intention of the parties. *Id.* (citing *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.* 521 S.W.2d 578 (Tenn. 1975). The Settlement Order states:

> It is accordingly considered by the Court and so ORDERED, ADJUDGED AND DECREED that . . . *the Employer* and the Insurer, their parents, subsidiaries, affiliates, officers, directors, *employees, agents, representatives*, successors, and assigns, be, and *are hereby, forever remised, released and discharged from any and all further liability* and indemnity, under the terms and provisions of the Workers' Compensation Law of the State of Tennessee, *at common law or otherwise*, except as stated in Paragraph 3 above, to the Employee, the Employee's administrators, executors, heirs, dependents and assigns, *as a result of or in any way connected with or growing out of the Employee's alleged injuries of November 12, 2007*, and any other workers'

---

[2]Darrell Carman also insists that the undisputed facts establish he was acting in the course and scope of his employment for the Auction Company when Plaintiff was injured and thus he is not "some person other than the employer," is required for tort liability under Tennessee Code Annotated § 5-6-112, "Third Party Actions." *See Taylor v. Linville*, 656 S.W.2d 368, 370 (Tenn. 1983) (Holding that, "a co-employee who, while acting within the course of his employment, causes an injury through his negligence is not 'some person other than the employer.'"). Because we have determined the Release applies to Darrell Carman regardless of whether he was acting in the course and scope of his employment, it is unnecessary to address this second defense as it pertains to Darrell Carman.

compensation claims which the Employee possesses against the Employer and/or Insurer. This Order supersedes and supplants any Orders the Tennessee Department of Labor may have issued with respect to the subject injury.

The relevant provisions of the Release clearly and unambiguously state that the Auction Company and its employees, agents, or representatives are forever released and discharged from any and all further liability to Plaintiff, including common law claims, as a result of or in any way connected with or growing out of Plaintiff's alleged injuries of November 12, 2007.[3] It is undisputed that Darrell Carman was the managing broker and thus an employee of the Auction Company when Plaintiff sustained the injuries at issue; therefore, no reasonable interpretation of the foregoing Release permits any of Plaintiff's claims against Darrell Carman to survive. Accordingly, we affirm the summary dismissal of all claims against Darrell Carman.

CLAIMS AGAINST CHAD CARMAN

In support of his motion for summary judgment, Chad Carman submitted a sworn affidavit regarding his relationship with the Auction Company. The two-sentence affidavit, which was executed nearly four years after the incident at issue on September 20, 2011, states:

1. My name is Chad Carman.
2. I am an agent of Gene Carman Real Estate and Auction, LLC.

FURTHER THIS AFFIANT SAITH NOT.

The affidavit is stated in the present tense, "I *am* an agent of Gene Carman Real Estate and Auction, LLC." What is significant is that it does not state, "I was an agent of the Auction Company on November 12, 2007, when Plaintiff sustained his injuries." Further, in opposition to the motion for summary judgment, Plaintiff submitted Chad Carman's deposition testimony, in which Chad Carman unequivocally states that he was not an employee, agent or representative of the Auction Company on November 12, 2007:

Q. Who were you working for at the time this happened?
A. For my dad part time and then for myself.
. . . .

---

[3]The only exception to the all encompassing release is the exception provided in paragraph 3 of the Release, which does not pertain to Plaintiff's claims against Darrell Carman.

Q. You were working for your father [on November 12, 2007]; is that correct?
A. I was not working for my father that day.

Q. So you were just helping out on the property?
A. Yes.

Q. You were not working?
A. No.

Q. You were not paid for that time?
A. No.
. . . .

*Q. When this happened you did not work for Gene Carman Auction & Real Estate, LLC, correct?*
*A. I wasn't working for them in that period of time, but I did work for them.*

*Q. But on the day this happened you were not working for them?*
*A. No.*

*Q. You weren't their employee or agent at that time, correct?*
*A. No.*

(Emphasis added).

As stated earlier, a release is a contract and rules of construction applied to contracts are used in construing a release, *Richland Country Club, Inc.*, 832 S.W.2d at 557, and the cardinal rule is to ascertain the intention of the parties. *Id.* Moreover, a release that is "confined to particular matters or causes operates to release only such claims as fairly come within the terms of the release." *Cross v. Earls*, 517 S.W.2d 751, 752 (Tenn. 1974). The Release at issue here was confined to claims against the Auction Company, its insurer, and their "parents, subsidiaries, affiliates, officers, directors, employees, agents, [and] representatives." On November 12, 2007, when Plaintiff sustained the injuries at issue, Chad Carman was none of these. Therefore, Chad Carman does not come within the terms of the Release. As a consequence, Chad Carman was not released from further liability for Plaintiff's injuries growing out of the November 12, 2007 incident. Therefore, Chad Carman is not entitled to summary judgment based upon the Release.

We now turn our attention to Chad Carman's assertion that Plaintiff's common law tort claims against him are barred because Plaintiff elected the workers' compensation claim as his exclusive remedy.

Workers' compensation is a "unique concept in the law," which operates to "provide quick and efficient compensation to injured workers in exchange for immunizing employers from tort liability and limiting their damages." *Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 882 (Tenn. 2005) (internal citations omitted). Tennessee Code Annotated § 50-6-108(a) of the Workers' Compensation Law states "[t]he rights and remedies to an employee subject to this chapter, on account of personal injury or death by accident, . . . shall exclude all other rights and remedies of the employee, the employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death." However, Tennessee Code Annotated § 50-6-108(a) "do[es] not shield everyone in the work environment under all circumstances" from liability. *Taylor v. Linville*, 656 S.W.2d 368, 369 (Tenn. 1983).

Workers' compensation is the injured employee's exclusive remedy, *unless a third party, other than the employer, causes the injury*. *Davis v. Alexsis, Inc*. 2 S.W.3d 228, 229 (Tenn. Ct. App. 1999) (citing *McAlister v. Methodist Hosp*., 550 S.W.2d 240, 242 (Tenn. 1977)). Tennessee Code Annotated § 50–6–112(a) expressly allows the injured worker to recover against a third party under certain circumstances:

> When the injury or death for which compensation is payable under this chapter was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured worker, . . . shall have the right to take compensation under this chapter, and the injured worker, . . . may pursue the injured worker's remedy by proper action in a court of competent jurisdiction against the other person.

The action authorized by Tennessee Code Annotated § 50–6–112(a) is in tort. *Davis*, 2 S.W.3d at 229 (citing *Plough, Inc. v. Premier Pneumatics, Inc*., 660 S.W.2d 495 (Tenn. Ct. App. 1983)). The policy for allowing suit against a responsible third party is that "since the third party could not have been liable for workers' compensation, he should be prepared to make the injured person whole under normal tort principles." *Posey v. Union Carbide Corp*., 705 F.2d 833, 834 (6th Cir.1983).

Plaintiff alleges that Chad Carman was reckless, grossly negligent, or negligent on November 12, 2007, when he came upon the scene of Plaintiff's accident and failed to render aid or call for medical assistance, and instead simply loaded Plaintiff into another truck and drove him home, without taking any steps to advise anyone of Plaintiff's condition.

Tennessee Code Annotated § 50–6–112(a) expressly allows an injured worker to pursue a tort remedy when the injury was caused "under circumstances creating a legal liability against some person other than the employer . . . ." *See also Davis*, 2 S.W.3d at 229. By his own deposition testimony, Chad Carman was not an employee of the Auction Company at the time of the incident, he was merely helping his father, thus, Plaintiff's claims against Chad Carman are claims against a third party, not the employer. As a consequence, the Workers' Compensation Law does not bar Plaintiff's claim against Chad Carman. *Davis*, 2 S.W.3d at 229; *see also McAlister*, 550 S.W.2d at 242.

For the foregoing reasons, we find that Chad Carman failed to establish that he is entitled to judgment as a matter of law. Therefore, we reverse the grant of summary judgment to Chad Carman.

## IN CONCLUSION

The judgment of the trial court as to the claims against Darrell Carman is affirmed. The judgment of the trial court as to the claims against Chad Carman is reversed and Plaintiff's claims against Chad Carman are reinstated and remanded for further proceedings consistent with this opinion. Costs of appeal are assessed one-half against Plaintiff and one-half against defendant Chad Carman.

_____
FRANK G. CLEMENT, JR., JUDGE